# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

ALINA VAZQUEZ, on behalf of herself
and all similarly-situated individuals,

    Plaintiff,

v.                                                  CASE NO.: 8:17-cv-00116-MSS-MAP

MARRIOTT INTERNATIONAL, INC.,

    Defendant.
_____/

## DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF LAW

Defendant Marriott International, Inc. respectfully requests that this Court dismiss with prejudice the First Amended Class Action Complaint and Demand for Jury Trial filed by Plaintiff Alina Vazquez and all others similarly situated, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. The grounds for this motion are set forth fully in the incorporated memorandum in support.

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................... 1

LEGAL STANDARD ............................................................................................................... 2

ARGUMENT ............................................................................................................................. 3

    I.     The Amended Complaint Should be Dismissed Because the Facts Alleged Demonstrate that Plaintiff does not Have Article III Standing. .............................. 3

    II.    The Amended Complaint Should be Dismissed for Failure to Exhaust Administrative Remedies. ....................................................................................... 5

    III.   The Amended Complaint Should be Dismissed for Failure to State a Plausible Claim Under ERISA. ................................................................................. 6

         A.    Paragraph 3 does not Plead a Plausible Claim Because Marriott was not Required to Provide a Spanish Supplement to the Marriott COBRA Notice. ...................................................................................... 6

         B.    Paragraph 4 does not Plead a Plausible Claim Because the Marriott COBRA Notice Adequately Explains the Procedures for Electing Coverage. ................................................................................................. 8

         C.    Paragraph 5 does not Plead a Plausible Claim Because the Marriott COBRA Notice Repeatedly Identifies Marriott as the Party Responsible for Administration of the COBRA Benefits. ......................... 9

         D.    Paragraph 6 does not Plead a Plausible Claim Because the Marriott COBRA Notice is Written in a Manner Calculated to be Understood by the Average Plan Participant. .......................................... 12

CONCLUSION ........................................................................................................................ 14

Defendant Marriott International, Inc. ("Marriott") hereby seeks dismissal of Plaintiff's First Amended Class Action Complaint (the "Amended Complaint")[1] pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## INTRODUCTION

In this putative class action, Plaintiff asserts a single claim alleging that Marriott violated Section 606(a) of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1166(a). Am. Compl. ¶¶ 51–57 (Doc. 24). Specifically, Plaintiff alleges the notice she received from Marriott regarding her right to elect continued group health coverage (the "Marriott COBRA Notice") did not comply with certain requirements of the Consolidated Omnibus Budget Reconciliation Act of 1985, as amended ("COBRA"). Plaintiff's Amended Complaint should be dismissed for three reasons.

First, the Amended Complaint should be dismissed pursuant to Rule 12(b)(1) because Plaintiff lacks constitutional standing under Article III. *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016). Even if the Amended Complaint sufficiently alleged that the Marriott COBRA Notice she received was deficient in any respect—and it was not—Plaintiff has not alleged that *she* suffered *any harm* from any alleged deficiency; she admits that she did not and could not elect COBRA coverage because she "couldn't afford it." Am. Compl. Ex. A ¶¶ 13–14.

Second, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because Plaintiff failed to exhaust her administrative remedies before filing suit. It is well-settled law in the Eleventh Circuit that a participant in an ERISA plan may not resort to litigation until after she has exhausted (or attempted to exhaust) the plan's administrative remedies. Plaintiff's

---

[1] Although Plaintiff's Amended Complaint is styled as a "First Amended Class Action Complaint And Demand For Jury Trial," Counsel for the Plaintiff and Defendant have conferred and agree that this is a non-jury trial case.

Amended Complaint, however, admits that she made no effort to pursue any administrative remedies before filing suit and does not allege that doing so would be futile.

Third, the Amended Complaint should be dismissed pursuant to Rule 12(b)(6) because it fails to identify any actual deficiency in the Marriott COBRA Notice. Contrary to the allegations in the Amended Complaint, the Marriott COBRA Notice: (1) was not required to be provided in Spanish or with a Spanish supplement; (2) did provide an adequate explanation of the procedures for electing coverage; (3) properly identified Marriott as the party responsible for administration of the COBRA continuation coverage benefits; and (4) provided adequate notice objectively "written in a manner calculated to be understood by the average plan participant," 29 C.F.R. § 2590.606-4(b)(4).

## LEGAL STANDARD

Plaintiff bears the burden of establishing that she has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992); *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013). To survive a motion to dismiss under Rule 12(b)(1), the Amended Complaint must include "general factual allegations of injury resulting from a defendant's conduct." *Case v. Miami Beach Healthcare Grp., Ltd.*, 166 F. Supp. 3d 1315, 1318 (S.D. Fla. 2016) (Martinez, D.J.). Further, in the context of a Rule 12(b)(1) motion, the Court is not required to accept Plaintiff's factual allegations as true. *See Burrows v. Purchasing Power, LLC*, No. 1:12-cv-22800-UU, 2012 WL 9391827, at *1 (S.D. Fla. Oct. 18, 2012) (Ungaro, D.J.) (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir. 1990)).

To survive a 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

2

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a complaint, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555).

## ARGUMENT

I. **The Amended Complaint Should be Dismissed Because the Facts Alleged Demonstrate that Plaintiff does not Have Article III Standing.**

Although Plaintiff alleges that the Marriott COBRA Notice was deficient in a number of respects—it was not, *see infra* Argument III—Plaintiff admits that she has not suffered any harm as a result of any alleged deficiency in that notice because she "couldn't afford [COBRA continuation coverage]." Am. Compl. Ex. A ¶¶ 13–14. In fact, Plaintiff does not even claim that any of the alleged deficiencies in the Marriott COBRA Notice caused her to suffer any harm. Am. Compl. Ex. A ¶¶ 10–14. Accordingly, Plaintiff does not have standing because she has not alleged any concrete harm.[2]

Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing that she "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). Further, "Article III standing requires a concrete injury even in the context of a statutory violation." *Id.* at 1549. Article III standing does not exist merely because "a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right." *Id.* at 1549.

---

[2] Moreover, Plaintiff's admission belies her claim of Article III standing because any alleged inadequacies in the Marriott COBRA Notice did not result in any harm "that is fairly traceable to the challenged conduct." *Spokeo*, 136 S. Ct. at 1547.

3

Consistent with *Spokeo*, the Eleventh Circuit recently affirmed a dismissal for lack of jurisdiction where the plaintiff alleged only a deprivation of a statutory right where there was no actual injury to the plaintiff. In *Nicklaw v. CitiMortgage, Inc.*, 839 F.3d 998 (11th Cir. 2016), the plaintiff alleged a violation of a New York law that required the defendant to record a certificate of discharge after the plaintiff paid off his mortgage; the failure to do so triggered statutory penalties. *Id.* at 1000. Although the plaintiff argued he had suffered the injury of a deprivation of his statutory right, the court held that even though the statute created a substantive right, the plaintiff had not suffered a concrete injury because he was not harmed when this right was violated. *Id.* at 1002–03. Dismissal for lack of jurisdiction was therefore proper. *Id.* at 1003.

Plaintiff here has likewise not been harmed as a result of any alleged violation of COBRA. Plaintiff alleges that because COBRA requires certain information be provided in a notice of continuation coverage, any plaintiff that claims they were not provided "an ERISA-compliant COBRA notice" has standing under Article III. Am. Compl. ¶ 38. But as the Eleventh Circuit recently explained in *Nicklaw*, a "plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" 839 F.3d at 1002 (alteration in original) (quoting *Spokeo*, 136 S. Ct. at 1549). Rather, a "plaintiff must suffer some harm or risk of harm from the statutory violation to invoke the jurisdiction of a federal court." *Id.* at 1003.

Citing *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016), Plaintiff argues that she has suffered an "informational injury" because she allegedly was not provided an "ERISA-compliant COBRA notice." Am. Compl. ¶ 38. In *Church*, however, the Fair Debt Collection Practices Act ("FDCPA") disclosure statement that was not provided to the plaintiff

4

was in and of itself a deprivation of the substantive statutory right and therefore sufficient to establish harm.  *See* 654 F. App'x at 995 n. 2.  The FDCPA "requires that debt collectors include certain disclosures in an initial communication with a debtor, or within five days of such communication." *Id.* at 994.  In *Church,* it was undisputed that the plaintiff did not receive the FDCPA's required disclosures.  *Id.* at 994–95.  Similarly, in *Havens Realty Corp. v. Coleman*, 455 U.S. 363 (1982), the case upon which *Church* bases its rarely-applied "informational standing" grounds, the misrepresentation to an African American that there were no apartments available for rent—when white applicants were told the opposite—was itself the racial discrimination made unlawful under the Fair Housing Act.  *Id.* at 373–74.

Here, the substantive right at issue is the right to elect continuation coverage under COBRA.  Plaintiff admittedly received notice of that right and admits that she did not elect continuation coverage not because the notice was inadequate, but because she "couldn't afford it."  Am. Compl. Ex. A ¶ 14.

## II.  The Amended Complaint Should be Dismissed for Failure to Exhaust Administrative Remedies.

It is well settled in the Eleventh Circuit that a plaintiff seeking to assert an ERISA claim may not resort to litigation without first exhausting (or attempting to exhaust) all available administrative remedies.  *See Perrino v. S. Bell Tel. & Tel. Co.*, 209 F.3d 1309, 1315 (11th Cir. 2000) ("Our law is well-settled that 'plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court.'" (quoting *Counts v. Am. Gen. Life & Accident Ins. Co.*, 111 F.3d 105, 108 (11th Cir. 1997)).  The requirement to exhaust administrative remedies is not limited to claims for benefits, and, in this Circuit, applies to breach of fiduciary duty claims and other statutory claims like the one in this case.  *See Lanfear v. Home Depot, Inc.*, 536 F.3d 1217, 1223–24 (11th Cir. 2008). ("The law is clear in this circuit

5

that plaintiffs in ERISA actions must exhaust available administrative remedies before suing in federal court." (quoting *Bickley v. Caremark RX, Inc.*, 461 F.3d 1325, 1328 (11th Cir. 2006) (internal quotation marks omitted)). "Th[e] exhaustion requirement applies equally to claims for benefits and claims for violations of ERISA itself." *Id.* (alteration in original) (quoting *Bickley*, 461 F.3d at 1328).

In this case, Plaintiff admits that she "has sought [no administrative remedies] and seeks to move forward with the putative class action." Am. Compl. ¶ 43. Tellingly, the Amended Complaint does not even allege that Plaintiff sought to obtain COBRA continuation coverage (because she admits that she could not afford it). Am. Compl. Ex. A ¶¶ 13–14. Nor does the Amended Complaint allege that exhaustion of administrative remedies would have been futile.[3] Accordingly, the Amended Complaint should be dismissed for failure to exhaust administrative remedies.

### III. The Amended Complaint Should be Dismissed for Failure to State a Plausible Claim Under ERISA.

The Amended Complaint alleges that there are four deficiencies in the Marriott COBRA Notice. As explained below, the Amended Complaint is incorrect both as a matter of fact and law.

#### A. Paragraph 3 does not Plead a Plausible Claim Because Marriott was not Required to Provide a Spanish Supplement to the Marriott COBRA Notice.

Although paragraph 3 of the Amended Complaint admits that Marriott was not required to provide a Spanish language COBRA election form, Plaintiff alleges that Marriott had a duty to "supplement" its election notice with information written in Spanish based on 29 C.F.R. §§ 2520.102-2(c), 2520.104b-10(e), which are regulations that apply only to summary plan

---

[3] Nor are there any allegations from which futility could reasonably be inferred, as the Eleventh Circuit requires a "'clear and positive'" showing of futility "before suspending the exhaustion requirement." *Bickley*, 461 F.3d at 1330 (quoting *Springer v. Wal-Mart Assocs.' Grp. Health Plan*, 908 F.2d 897, 901 (11th Cir. 1990)).

6

descriptions and summary annual reports, respectively, and not to COBRA notices.[4]  Am. Compl. ¶ 3.

The law on this issue is well settled.  "Neither COBRA nor ERISA contain a foreign language requirement," and "there is no requirement that COBRA notices be translated into a foreign language." *Mercy Hosp. & Med. Ctr. v. Meyer Steel & Drum Benefit Plan*, No. 94 C 3656, 1996 WL 88998 (N.D. Ill. Feb. 28, 1996) (citing *Diaz v. United Agric. Emp. Welfare Benefit Plan & Trust*, 50 F.3d 1478, 1484 (9th Cir. 1995)).

*Mercy Hospital* considered a directly analogous situation where an employee was terminated, a continuation coverage notice was sent only in English, and the employer knew that the employee could not understand English. *See* 1996 WL 88998 at *1–2.  The court found that the COBRA notice did not have to be translated into a foreign language, even if the participant did not understand English, because ERISA's foreign language provisions only apply to summary plan descriptions and summary annual reports. *See id.* at *1–3.  The court concluded that "[a]s a matter of law, the English-language notice is adequate." *Id.* at *3.

The *Mercy* court directly considered the distinction between the COBRA notice section and the Summary Plan Description and Summary Annual Report sections and found that "there is no requirement that COBRA notices be translated into a foreign language." *Id.* at *2.  The court reasoned that:

> The Secretary of Labor has imposed a foreign language requirement for only two types of ERISA documents.  They are summary plan descriptions, 29 U.S.C. 2520.102-2(c), and summary annual reports, 29 C.F.R. 2520.10b-10(e).  The Secretary of Labor has not required the employer to furnish even those two documents in the employee's native language. *Diaz*, 50 F.3d at 1484.  Instead, to comply with the Secretary's requirements, the administrator must merely include

---

[4] Even summary plan descriptions and annual reports do not have to be provided entirely in the employee's language, but instead "must merely include a sentence in the employee's language indicating where he can obtain assistance in understanding the document." *Mercy Hosp. & Med. Ctr. v. Meyer Steel & Drum Benefit Plan*, No. 94 C 3656, 1996 WL 88998, at *2 (N.D. Ill. Feb. 28, 1996).

> a sentence in the employee's language indicating where he can obtain assistance in understanding the document. *Id.*
>
> ***The Secretary of Labor has not imposed such a requirement with respect to notices of continuation coverage.*** For this court "to read such a requirement into the statute by judicial fiat where the Secretary has not done so would do violence to the legitimate expectations of employers and plan administrators who have conformed their conduct to the existing regulations." *Id.* at 1485.

*Id.* (emphasis added).

There is, therefore, no requirement that Marriott provide a Spanish-language supplement to the Marriott COBRA Notice.

### B. Paragraph 4 does not Plead a Plausible Claim Because the Marriott COBRA Notice Adequately Explains the Procedures for Electing Coverage.

Paragraph 4 of the Amended Complaint alleges that the Marriott COBRA Notice is deficient by failing to provide "physical 'election forms' . . . that can be filled out and mailed in by those seeking coverage." Am. Compl. ¶ 4 (internal citations omitted). This allegation is insufficient as a matter of law because nothing in the applicable regulations requires that a COBRA notice include a physical election form. *See* 29 C.F.R. § 2590.606-4(b)(4)(i)–(xiv).

The Marriott COBRA Notice clearly sets forth the procedure for making elections in accordance with 29 C.F.R. § 2590.606-4(b)(4)(v). Page 2 of the Marriott COBRA Notice begins with the bolded header "**Enrollment**," and proceeds to set forth the procedure for electing coverage:

> To enroll in COBRA coverage, access myHR® website at **www.marriottbenefits.com** or call the myHR Service Center at **1-888-88-4myHR** no later than **December 22, 2016**. You can enroll yourself and your covered family members. If you don't enroll within that time frame, you forfeit your rights to COBRA coverage.

Am. Compl. Ex. D (Doc. #24-4 at page 3) (emphasis in original). Similar instructions are also provided on page 11: "[t]o elect continuation coverage, you must call the myHR Service Center

8

at **1-888-88-4myHR** by the enrollment deadline provided on the COBRA Enrollment Notice."
*Id.* These instructions satisfy the requirements of 29 C.F.R. § 2590.606-4(b)(4)(v).

Although Plaintiff alleges that she does not use computers, Am. Compl. Ex. A ¶ 11, she has made no such claim regarding telephones.[5] Upon calling 1-888-88-4myHR as instructed in the Marriott COBRA Notice, a recording is immediately played in both English and Spanish, concluding with the instruction: "[p]ara español, diga 'español.'" ("For Spanish, say 'Spanish'"). This Court can take judicial notice of this fact in considering a motion to dismiss, as this information is publicly available and not subject to reasonable dispute. *See, e.g.*, *Termarsch v. Argent Mortg. Co., LLC.*, No. 8:07-CV-1725-T-30TBM, 2008 WL 1776592, at *4 n. 4 (M.D. Fla. Apr. 16, 2008) (Moody, Jr., D.J.) (granting motion to dismiss for lack of subject matter jurisdiction and taking judicial notice of information available online); *Herman v. Seaworld Parks & Entm't, Inc.*, Case No: 8:14-cv-3028-T-35JSS, 2016 WL 7447555, at *2 n. 1 (M.D. Fla. Aug. 26, 2016) (Scriven, D.J.).

      **C.    Paragraph 5 does not Plead a Plausible Claim Because the Marriott COBRA Notice Repeatedly Identifies Marriott as the Party Responsible for Administration of the COBRA Benefits.**

Paragraph 5 of the Amended Complaint alleges that the Marriott COBRA Notice is deficient because it does not "affirmatively identify the Plan Administrator." Am. Compl. ¶ 5. This allegation is deficient as a matter of law; 29 C.F.R. § 2590.606-4(b)(4)(i) does *not* require the notice to identify the "plan administrator." Rather, it requires identification "of the party

---

[5] Although Plaintiff complains that the website path of the myHR Service Center is "no longer operable and instead re-directs visitors" through two subsequent web addresses, Plaintiff fails to point out that these redirections happen *without any input from the potential enrollee*. By inputting the simple and explicit "www.marriottbenefits.com" web address into a search browser, as directed by the Marriott COBRA Notice, a potential enrollee is automatically directed to the correct website from which he or she can obtain coverage. This Court can take judicial notice of this fact. Plaintiff's claim that confusion is created by two redirected web addresses, when both redirections occur automatically without any input from potential enrollees, demonstrates the lack of substantive claims available to Plaintiff. Moreover, Plaintiff simultaneously alleges that she does not use computers, which is why Plaintiff could have called 1-888-88-4myHR as instructed in the Marriott COBRA Notice.

responsible under the plan for the administration of continuation coverage benefits." 29 C.F.R. § 2590.606-4(b)(4)(i).[6]

Furthermore, Plaintiff is also incorrect as a matter of fact. The Marriott COBRA Notice repeatedly identifies Marriott as the party to contact regarding COBRA benefits, provides both a mailing address and a benefits website address (myHR, www.marriottbenefits.com), and provides a toll-free telephone number. Am. Compl. Ex. D (Doc. #24-4 at page 2). Marriott is prominently identified on the letterhead, and the opening page of the Marriott COBRA Notice provides contact information including the website and a telephone number for the myHR service center. *Id.* That same information is repeatedly provided throughout the Marriott COBRA Notice. In fact, although the use of the model notice is not required, when the Marriott COBRA Notice is compared to the model notice, which includes bracketed spaces for entering the party responsible for COBRA administration, the Marriott COBRA Notice provides more information than the model notice:

| **Model Notice (Ex. C)** | **The Marriott COBRA Notice (Ex. D)** |
|---|---|
| "If you elect continuation coverage, you may be able to extend the length of continuation coverage if a qualified beneficiary is disabled, or if a second qualifying event occurs. You must notify [*insert name of party responsible for COBRA administration*] of a disability or a second qualifying event within a certain time period to extend the period of continuation coverage."<br><br>Ex. C (Doc. # 24-3 at page 3). | "If you elect continuation coverage, an extension of the maximum period of coverage may be available if a qualified beneficiary is disabled or a second qualifying event occurs. You must notify the myHR Service Center of a disability or a second qualifying event in order to extend the period of continuation coverage. . . . Each qualified beneficiary who has elected continuation coverage will be entitled to the 11-month disability extension if one covered family member qualifies. To receive the coverage extension, you, your covered spouse, |

---

[6] Plaintiff also complains that the Marriott COBRA Notice does not include certain disclosures relating to the consequences of failing to elect COBRA continuation coverage. Am. Compl. ¶ 23c. This allegation fails to state a claim because those disclosures are obsolete and not required as a result of the guarantees of coverage afforded by the Affordable Care Act. For this reason, in 2013 the Department of Labor deleted these outdated disclosures from its model notice, a copy of which is attached as Exhibit C to Plaintiff's Amended Complaint. Guidance *available at* https://www.dol.gov/agencies/ebsa/employers-and-advisers/guidance/technical-releases/13-02.

| | |
|---|---|
| | covered domestic partner, or your covered dependents must notify the myHR Service Center by calling **1-888-88-4myHR**."<br><br>Ex. D (Doc. #24-4 at page 10) (emphasis in original). |
| "If you have questions about the information in this notice, your rights to coverage, or if you want a copy of your summary plan description, contact [*enter name of party responsible for COBRA administration for the Plan, with telephone number and address*].<br><br>Ex. C (Doc. #24-3 at page 7). | "If you've any questions concerning the information in this notice or your rights to coverage or if you want a copy of your summary plan description, you should contact the myHR Service Center at **1-888-88-4myHR**."<br><br>Ex. D (Doc. #24-4 at page 17) (emphasis in original). |
| *"First Payment for continuation coverage*<br><br>You must make your first payment for continuation coverage no later than 45 days after the date of your election (this is the date the Election Notice is postmarked). If you don't make your first payment in full no later than 45 days after the date of your election, you'll lose all continuation coverage rights under the Plan. You're responsible for making sure that the amount of your first payment is correct. You may contact [*enter appropriate contact information, e.g., the Plan Administrator or other party responsible for COBRA administration under the Plan*] to confirm the correct amount of your first payment."<br><br>Ex. C (Doc. #24-3 at page 9). | "**First Payment for Continuation Coverage**<br><br>If you elect continuation coverage, you don't have to send any payment at the time you enroll by calling the myHR Service Center at **1-888-88-4myHR**. However, you must make your first payment for continuation coverage, not later than 45 days after the date of your election. If you don't make your first payment for continuation coverage, in full, not later than 45 days after the date of your election, you'll lose all continuation coverage rights under the Plan. You're responsible for making sure that the amount of your first payment is correct. You'll receive a Billing Notice confirming the amount of the payment. Contact the myHR Service Center at **1-888-88-4myHR** if you've questions about your first payment."<br><br>Ex. D (Doc. #24-4 at page 11) (emphasis in original). |
| "Your first payment and all periodic payments for continuation coverage should be sent to:<br><br>[*enter appropriate payment address*]"<br><br>Ex. C (Doc. # 24-3 at page 22). | "Payments should be sent to:<br><br>MARRIOTT<br>P.O. BOX 1016<br>CAROL STREAM IL 60132-1016"<br><br>Ex. D (Doc. #24-4 at page 11). |

11

### D.  Paragraph 6 does not Plead a Plausible Claim Because the Marriott COBRA Notice is Written in a Manner Calculated to be Understood by the Average Plan Participant.

Lastly, Plaintiff makes a bare allegation that the Marriott COBRA Notice was not "written in a manner calculated to be understood by the average plan participant" because allegedly it "is confusing, ambiguous and critical components, if included, are piecemealed throughout the notice." Am. Compl. ¶¶ 6, 23b. The sole factual basis for this subjective and bare legal allegation is Plaintiff's statement in her Declaration that although someone translated it for her, she "could not understand it" and "not once throughout the entire Notice did [she] see any information as to who exactly the Plan Administrator was." Am. Compl. Ex. A ¶¶ 10, 12.

Plaintiff's bare and conclusory allegations that the Marriott COBRA Notice is "confusing" and "ambiguous" are not sufficient to state a claim. Am. Compl. ¶ 23b. As an initial matter, Plaintiff's allegations are not plausible. Plaintiff admittedly reads and speaks "Spanish only." Am. Compl. Ex. A ¶ 1. She does not and cannot make any plausible (or credible) allegation regarding whether the Marriott COBRA Notice, which is in English, is ambiguous or unambiguous.

Further, Plaintiff fails to point to any specific provision in that notice that she alleges was confusing or that she did not understand, other than her statement that she was looking for and could not find the identity of the "Plan Administrator," which was not required to be provided in the notice. See *supra* Argument III.C. Moreover, the essential elements of the Marriott COBRA Notice were spelled out so clearly that bare and subjective allegations that it was "confusing" and "ambiguous" cannot be given any credit. The first page of the Marriott COBRA Notice states:

> As a result of your Termination on **October 1, 2016**, your current group health plan coverage ends as listed in the following table. You may choose to remain covered under your current group health plan for up to **18** months. This coverage

>is provided through the Consolidated Omnibus Budget Reconciliation Act and is often referred to as "COBRA" coverage.

Am. Compl. Ex. D at 1.  The second page states:

>To enroll in COBRA coverage, access myHR® website at **www.marriottbenefits.com** or call the myHR Service Center at **1-888-88-4myHR** no later than **December 22, 2016**.  You can enroll yourself and your covered family members.  If you don't enroll within that time frame, you forfeit your rights to COBRA coverage.

*Id.* at 2.  Plaintiff's bald allegation that she "could not understand" the notice is not sufficient to support a plausible claim that the Marriott COBRA Notice was not written in a manner calculated to be understood by the average plan participant.  *Iqbal,* 556 U.S. at 678 (explaining that a claim is plausible only if the facts alleged raise a right to relief above the speculative level and permit a court "to infer more than the mere possibility of misconduct").

The applicable regulations—29 C.F.R. § 2590.606-4—list the specific information that is required to satisfy the obligation of providing satisfactory "notice to each qualified beneficiary of the qualified beneficiary's rights to continuation coverage under the plan."  To allege a violation of the regulations, a plaintiff must identify information that was required to be provided, but was not.  *See, e.g., Hoffman v. R.F. Grp.*, No. 3:15–cv–29–J–34MCR, 2015 WL 4139084, at *7 (M.D. Fla. May 21, 2015) (Richardson, M.J.) (discussing specific information plaintiff alleged was not included in a notice, in violation of 29 C.F.R. § 2590.606-4(b)(4)); *Franks v. Cent. Garden & Pet Co.*, No. 3:06-CV-68(CDL), 2007 WL 2320624, at *6 n. 8 (M.D. Ga. Aug. 10, 2007) (same).  A plaintiff cannot circumvent this basic pleading requirement by merely alleging she was confused by a statutorily-compliant notice.

Moreover, Plaintiff's subjective understanding, or alleged lack thereof, regarding the Marriott COBRA Notice is not sufficient to support a claim as a matter of law.  The relevant inquiry is not whether the participant *actually* understood the notice.  Rather, the regulations

13

require that on an objective basis the notice "be written in a manner calculated to be understood by the average plan participant." 29 C.F.R. § 2590.606-4(b)(4). Summary Plan Descriptions are subject to the same requirement, *see* 29 C.F.R. § 2520.102-2(a), which has been interpreted as "an objective standard rather than requiring an inquiry into the subjective perception of the individual participants." *Wilson v. Sw. Bell Tel. Co.*, 55 F.3d 399, 407 (8th Cir. 1995). Plaintiff's subjective understanding, or alleged lack thereof, is therefore irrelevant, as the plain language of the statutorily-compliant Marriott COBRA Notice satisfies the requirements of 29 C.F.R. § 2590.606-4(b)(4), as discussed above.

## CONCLUSION

For the reasons set forth above, Defendant respectfully requests that the Court grant its Motion to Dismiss and dismiss the Amended Complaint in its entirety.

Respectfully submitted,

/s/Ian C. Taylor
Fredrick H.L. McClure
Florida Bar No. 147354
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone: 813-229-2111
Fax: 813-229-1447
Email: fredrick.mcclure@dlapiper.com
       amy.reagan@dlapiper.com
       sheila.hall@dlapiper.com

Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
**DLA Piper LLP (US)**
500 8th Street, NW
Washington, DC 20004
Phone: 202-799-4000

14

        Fax:  202-799-5000
        Email:  mark.muedeking@dlapiper.com
               ian.taylor@dlapiper.com

*Attorneys for Defendant*
*Marriott International, Inc.*

15

**CERTIFICATE OF SERVICE (electronic filing)**

  **I HEREBY CERTIFY** that on April 24, 2017, I electronically filed the foregoing with the Clerk of the Court using the Court's CM/ECF system, which will send a notice of electronic filing to the following attorneys:

Luis A. Cabassa
Brandon J. Hill
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue
Suite 300
Tampa, FL 33602
Telephone (813) 224-0431
Fax (813) 229-8712
Email: lcabassa@wfclaw.com
   bhill@wfclaw.com
   mk@wfclaw.com

Chad A. Justice
**BLACK ROCK TRIAL LAWYERS PLLC**
201 S. Westland Avenue
Tampa, FL  33606
Telephone (813) 254-1777
Fax (813) 254-3999
Email: chadjustice@blackrocklaw.com
   litigation@blackrocklaw.com

*Attorneys for Plaintiff*

            /s/Ian C. Taylor

            *Attorney for Defendant*