UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ALINA VAZQUEZ, individually
and on behalf of all others
similarly situated,**

    **Plaintiff,**

v.                                                        Case No.: 8:17-cv-116

**MARRIOTT INTERNATIONAL, INC.,**

    **Defendant.**
_____/

## JOINT MOTION FOR PRELIMINARY
## APPROVAL OF CLASS ACTION SETTLEMENT

Pursuant to Fed.R.Civ.P. 23, Named Plaintiff Alina Vazquez and Defendant Marriott International, Inc. file this Joint Motion with incorporated Memorandum of Law, seeking an Order: (1) preliminarily approving the Settlement Agreement between Named Plaintiff, and Defendant Marriott International, Inc. ("Marriott" or "Defendant") (collectively the "Parties"), and the class; (2); approving the form and manner of notice to the class; (3) scheduling a fairness hearing for the final consideration and approval of the Parties' settlement; and, finally, (4) approving the settlement in a subsequent Order. A proposed Order granting this Motion is attached as Exhibit A. All defined terms contained herein shall have the same meaning as set forth in the Class Action Settlement and Release ("Settlement Agreement") attached as Exhibit B. In support of this Unopposed Motion, the Parties respectfully submit the following:

**I.**     **BACKGROUND AND OVERVIEW OF SETTLEMENT.**

On January 17, 2017, Plaintiff filed a Class Action Complaint against Defendant in which she asserted claims for herself and a putative class under the Employee Retirement Income Security

Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"). Plaintiff's complaint was amended, as a matter of right, on April 3, 2017.

In her Complaint Plaintiff alleged Defendant violated the COBRA Notice requirements by providing her and the putative class members whom she seeks to represent with a deficient COBRA notice ("COBRA Notice") in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The Parties have since reached an agreement that, if approved by this Court, will resolve all claims of the Named Plaintiff and putative class members against Defendant and all Released Parties.

The Settlement provides for Settlement Payments to be made to approximately 19,175 Settlement Class Members. Defendant will contribute the gross sum of $250,000 into the fund as per the terms of the Settlement Agreement. Importantly, the Settlement Class Members will not be required to take any action to receive a portion of the funds, making it a "claims paid" settlement. Moreover, there is no reverter to Defendant, as explained below. The gross payment per Settlement Class Member is approximately $13.03 per Settlement Class Member. If any money remains in the Settlement Fund after these distributions and after Settlement Class Members have had 60 days to cash their settlement checks, left over funds shall be paid as a *cy pres* donation to a non-profit 501(c)(3) charity, Bay Area Legal Services, subject to Court approval. The proposed Settlement is fair and reasonable, and Preliminary Approval by the Court should be granted.

### A. **Plaintiff's Allegations and Case Procedural History.**

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq*. and 29 U.S.C. § 1166(a). The lawsuit generally alleges Defendant provided Plaintiff and other class members with a deficient COBRA Notice. More specifically,

Plaintiff alleged that, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq*., the COBRA Notice failed to: (i) provide the information in Spanish; (ii) adequately explain the procedures for electing coverage; (iii) identify the Plan Administrator; and, finally, (iv) be written in a manner calculated to be understood by the average plan participant. As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of herself and all others similarly situated. Plaintiff later choose not to pursue the Spanish-language claim. Defendant denies all allegations.

This case was heavily litigated for more than two years. The original complaint was filed on January 17, 2017. (Doc. 1). The Amended Complaint was filed on April 3, 2017 (Doc. 24). Defendant filed its Motion to Dismiss the Amended Complaint on April 24, 2017, which the Court denied on August 25, 2017. Following the Parties' unsuccessful mediation, held on November 7, 2017 with mediator Rodney Max, Plaintiff filed her motion seeking class certification on November 30, 2017. (Doc. 47).

During late 2017 and through the fall of 2018 the Parties engaged in exhaustive discovery efforts, including nine depositions, exchanging thousands of pages of documents, third-party written discovery and depositions, and even expert witness discovery. Then, on August 7, 2018, this Court granted Plaintiff's motion for class certification. (Doc. 61). Subsequently, Defendant petitioned the Eleventh Circuit for permission to appeal the class certification. The Eleventh Circuit denied the Defendant's petition for permission to appeal the class certification on October 17, 2019. (Doc. 66). On December 6, 2018, this Court conducted a review of the Parties' Long Form Notice and Short Form Notice, (Doc. 82-1 and 82-2) and approved the Notice of Pendency of Class Action and the Class Action Summary Notice for distribution to the putative class members. (Doc. 92).

Both parties filed motions for summary judgment (Docs. 70, 73), opposition briefs (Docs. 83, 86), and reply briefs (Docs. 93, 94). Plaintiff also filed an unsuccessful *Daubert* motion seeking to exclude Defendant's expert witness. Following summary judgment briefing, the Parties submitted their Joint Pretrial Statement (Doc. 97). Each side also submitted a trial brief (Docs. 102, 104), with trial originally set for trial April 29, 2019.

Trial was re-scheduled for future date by Court order dated April 24, 2019. (Doc. 113). Before a new trial was set the Court granted Plaintiff's request for a court-ordered settlement conference before the presiding Magistrate Judge. That settlement conference was scheduled for November 7, 2019. In the weeks leading up to Court-ordered settlement conference counsel for both parties actively engaged in settlement discussions. A potential class-wide resolution was reached on or about September 25, 2019, for which the Parties now seek preliminary court approval.

B. **Defendant's Defenses.**

Defendant presented numerous defenses to Plaintiff's allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages and an Article III standing defense. Specifically, Defendant denied, and continues to deny, that it violated the 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class members because the COBRA Notice complied with the notice requirements under ERISA. Furthermore, Defendant denies that Plaintiff suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing and asserts that the COBRA Notice is fully compliant with ERISA and COBRA, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any

facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

II.  **THE PROPOSED SETTLEMENT**.

    A.  **The Settlement Class**.

The Settlement Agreement defines the Settlement Class as follows: "All participants and beneficiaries in the Marriott International, Inc. Health & Welfare Plan who: (1) were sent a COBRA notice by defendant, in the form attached to the Motion for Class Certification as Exhibit A, during the applicable four-year statute of limitations period as a result of a qualifying event, as determined by Defendant, and (2) did not elect continuation coverage" (referenced herein as the "Settlement Class").

    B.  **Benefits to the Settlement Class and Named Plaintiff**.

The Settlement Agreement, if approved, will resolve all claims of the Named Plaintiff and all Settlement Class Members in exchange for the Defendant's agreement to pay $250,000 to the Settlement Fund. The Parties negotiated the case on a common fund basis, meaning that the Settlement amounts the parties were exchanging were inclusive of all attorneys' fees, incentive awards, and settlement administrative expenses. The Parties did not negotiate attorneys' fees until after all terms related to the size of the common Settlement Fund, and the class definitions, were agreed upon.

With the Settlement Class comprised of approximately 19,175 members, each Settlement Class Member will receive a net settlement payment of approximately $5.00 if the Court grants the amounts for attorneys' fees, administrative expenses, and a Class Representative Service Award. This is a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the Settlement Fund. Rather, all Settlement Class Members will simply receive checks after the Effective Date of the Settlement. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

The Named Plaintiff will request court approval of an additional claim in the sum of $5,000 as a Service Award for the services provided to the Settlement Class in connection with the prosecution of this Action, in addition to the claim provided her as a Settlement Class Member.

The Settlement Agreement also provides that Plaintiff's Counsel's fees, settlement administration costs and Service Award for the Named Plaintiff are to come out of the Settlement Fund, subject to the Court's approval. Class Counsel is authorized to file an unopposed petition for up to one-third of the fund as attorneys' fees and costs. Neither Settlement approval nor the size of the Settlement Fund are contingent upon the full amount of any requested fees or class representative service award being approved.

C. **Administration of Notice.**

The Parties have agreed to utilize a private, third-party vendor, American Legal Claim Services, LLC, ("ALCS") to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Settlement Administrator shall be paid from the Settlement Fund.

The Parties seek court approval of the agreed upon Short Form and Long Form Notices of Settlement to the Class Members, attached hereto as Exhibit C and Exhibit D. Within ten (10)

days of the Court's Preliminary Approval approving the Notices, the Settlement Administrator shall provide both Notices to Class Counsel and Defendant's Counsel. Within twenty (20) days of approval from the Parties, the Settlement Administrator shall mail the Short Form Notice by U.S. mail to all Settlement Class Members. The Short Form Notice shall apprise the Settlement Class of the existence of the Settlement Agreement and of the Settlement Class Members' eligibility to recover their pro-rata portion of the settlement proceeds, and will include an explanation of the "claims paid" process, as well as an explanation as to what happens if the settlement checks are not timely cashed. Namely, the funds will be made part of a donation to a *cy pres* recipient, Bay Area Legal Services.

The Short Form and Long Form Notices informed Settlement Class Members of: (1) the material terms of the Settlement Agreement; (2) their right to object and how to do so; (3) that they will be bound by the Settlement Agreement; (4) the date, time and location of the final fairness hearing scheduled by the Court (to be held at least 90 days after the required CAFA notices have gone out); and (5) that the Court retains the right to reschedule the final fairness hearing without further notice.

The Settlement Agreement provides that Settlement Class Members who choose to object to the settlement must do so within 60 days of the Short Form mailing date. If the Court grants Final Approval of the settlement, Defendant will transfer the full amount of the Settlement Fund to the Settlement Administrator within ten (10) days of the Effective Date of the Settlement. Settlement checks will be mailed to all Settlement Class Members within ten (10) days after receipt by the Settlement Administrator of the Settlement Fund monies. To the extent any money remains in the fund after these distributions and after Settlement Class Members have had 60 days to cash

their settlement checks, such monies shall be paid as a *cy pres* donation to Bay Area Legal, subject to Court approval.

### D. Attorneys' Fees and Expenses.

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to one-third of the fund as attorneys' fees, reasonable litigation costs, and any settlement administration expenses. Class Counsel will file a separate motion seeking approval for fees and costs. Defendant does not oppose the amount of fees and costs sought by Class Counsel for up to one third of the total fund, plus costs.

### E. Class Action Fairness Act Notice.

The Settlement Administrator will cause notice of the proposed Settlement to be served upon the appropriate Federal and State officials, as required by the Class Action Fairness Act of 2005 ("CAFA").

## III. PRELIMINARY SETTLEMENT PROPOSAL

### A. The Settlement Meets the Requirements of Rule 23(e) for Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc.*, 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009); "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id.* The decision whether to approve a

proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)).

Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members equitably relative to each other. This standard is satisfied here and the Court should enter an order Preliminarily Approving the Class Action Settlement Agreement.

### 1. The Class representative and Class Counsel Have Adequately Represented the Class.

There is no question that Alina Vazquez and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Alina Vazquez, is adequate given that her interests are equivalent to those of the Settlement Class. She was actively involved in this case from its inception. She participated in written discovery,

was deposed by Defendant, and even had her family members deposed by Defendant. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class Members in prosecuting her claims. She, along with her counsel, secured a $250,000 dollar settlement from a highly sophisticated Defendant in favor of the class members she seeks to represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A. In fact, Judge Scriven previously appointed both of the above lawyers as class counsel in *Kohler v. SWF Operations, LLC,* M.D. Fla. Case No.: 8:14-cv-02568-MSS-TGW (July 5, 2016) (Doc. 54). Additionally, the undersigned have been appointed as class counsel in multiple COBRA class action cases, including most recently in *Hicks v. Lockheed Martin Corp, Inc*., 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same). This Court earlier when granting Plaintiff's Motion for Class Certification that the undersigned are "qualified and competent counsel," who together with Plaintiff, have dutifully prosecuted this action. (Doc. 61). Nothing has changed since that determination.

When, as here, the Parties are represented by counsel who have significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the

settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at *26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations during the period of time after significant discovery, motion practice, and only on the eve of trial. This also weighs in favor of approval. *See* <u>Gevaerts v. TD Bank, N.A.,</u> No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel. The Parties first participated in mediation early in the litigation in November 2017. The Parties and counsel were well-informed of the potential strengths and weaknesses of their positions and conducted good faith negotiations in an effort to avoid costly and protracted litigation.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $250,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $13.03 per Settlement Class Member, with a net recovery after attorneys' fees and costs, administrative expenses, and a Service Award, of approximately $5.00. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Gilbert v. SunTrust Banks, Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13). The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members

will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc*., 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a Settlement Payment. In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)). "Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason. Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness." *In re Checking Account Overdraft Litig.*, 2012 U.S. Dist. LEXIS 56115, at *51-52 (*citations and quotations omitted*).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g*., *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J. Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp*., 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774

F.3d 423 (8th Cir. 2014) (court did not award statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Though Named Plaintiff survived class certification, it was vigorously contested by Defendant, based upon assertions that the Named Plaintiff lacked standing and therefore could not adequately represent the class. The Parties engaged in significant discovery, including conducting depositions and the engaging by Defendant of an expert. Moreover, both sides briefed and filed their respective motions for summary judgment, submitted a joint pretrial statement, and even filed trial briefs. Each of these phases of litigation presented serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to

judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Class Notices.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 19,175 participants, each Settlement Class Member will receive a gross settlement payment of $13.03 with a net settlement payment if the Court awards attorneys' fees and expenses, administrative costs and a Service Award, of approximately $5.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate her claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame Defendant's summary judgment motion, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a

court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

## IV. <u>**The Proposed Notice of Settlement Is Reasonable.**</u>

In addition to reviewing the substance of the parties' Settlement Agreement, the Court must ensure that notice is sent in a reasonable manner to all Settlement Class Members who would be bound by the proposed settlement. Fed. R. Civ. P. 23(e)(1). The "best notice" practicable under the circumstances includes individual notice to all potential class members who can be identified through reasonable effort. Fed. R. Civ. P. 23(c)(2)(B). That is precisely the type of notice contemplated here.

Under the Settlement, each Settlement Class Member will be sent a Short Form Notice of the proposed settlement via U.S. First-Class Mail in the form of a postcard, informing them of the terms of the Settlement and their right to object, subject to Court approval in its Preliminary Approval Order of both the Short Form and Long Form Notice. The Short Form Notice will direct the Settlement Class Members to the Settlement Administrator's website where additional information will be provided, along with a 1-800 informational number and call center. The content of the Long Form Notice is also reasonable and appropriate. Under Rule 23(c)(2)(B), notice must clearly and concisely state: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

The proposed Notices of Settlement include all of this information. In addition, the Notices of Settlement clearly spell out the terms of the proposed Settlement, provide a website address where Settlement Class Members can obtain a copy of the Settlement Agreement and other relevant documents, and include a phone number that they may call if they have any questions. Accordingly, this Court should approve both the Short Form and the Long Form Notice of Settlement, as both the content of the notices and the methods of dissemination are reasonable.

IV.     **CONCLUSION.**

For the foregoing reasons, the Parties respectfully request that the Court enter the attached proposed Preliminary Approval Order and thereby (a) appoint Plaintiff as the Class Representative and Plaintiff's counsel as Class Counsel for Settlement purposes; (b) authorize distribution of the Notice of Settlement to the Settlement Class; (c) set a Deadline to Object; and (d) set a date for a Final Approval Hearing, not to occur until at least ninety (90) days after entry of the Court's Preliminary Approval Order.

DATED this 12th day of November, 2019.

Respectfully submitted,

| | |
|---|---|
| /s/ Brandon J. Hill | /s/ Ian C. Taylor |
| Luis A. Cabassa | Fredrick H.L. McClure |
| Florida Bar No. 053643 | Florida Bar No. 147354 |
| Brandon J. Hill | Amanda E. Reagan |
| Florida Bar No. 37061 | Florida Bar No. 92520 |
| **WENZEL FENTON CABASSA, P.A.** | **DLA PIPER LLP (US)** |
| 1110 North Florida Avenue, Suite 300 | 3111 W. Dr. Martin Luther King Jr. Blvd. |
| Tampa, FL 33602 | Suite 300 |
| Telephone (813) 224-0431 | Tampa, Florida 33607-6233 |
| Fax (813) 229-8712 | Phone: 813-229-2111 |
| Email: lcabassa@wfclaw.com | Fax: 813-229-1447 |
| bhill@wfclaw.com | Email:fredrick.mcclure@dlapiper.com |
| twells@wfclaw.com | amy.reagan@dlapiper.com |
| | sheila.hall@dlapiper.com |
| Chad A. Justice | |
| Florida Bar No. 121559 | Mark Muedeking (*pro hac vice*) |

| | |
|---|---|
| **JUSTICE FOR JUSTICE, LLC**<br>1205 N. Franklin St.<br>Tampa, FL 33606<br>Telephone (813) 254-1777<br>Fax (813) 254-3999<br><br>*Attorneys for Plaintiff* | Ian C. Taylor (*pro hac vice*)<br>**DLA Piper LLP (US)**<br>500 8th Street, NW<br>Washington, DC 20004<br>Phone: 202-799-4000<br>Fax: 202-799-5000<br>Email: mark.muedeking@dlapiper.com<br>    ian.taylor@dlapiper.com<br>*Attorneys for Defendant*<br>*Marriott International, Inc.* |

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 12th day of November, 2019, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

/s/Brandon J. Hill
**BRANDON J. HILL**