# EXHIBIT B
## (Class Action Settlement Agreement)

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ALINA VAZQUEZ, individually
and on behalf of all others
similarly situated,

      Plaintiff,

v.                              Case No.: 8:17-cv-00116-MSS-SPF

MARRIOTT INTERNATIONAL, INC.,

      Defendant.

_____/

## CLASS ACTION SETTLEMENT AGREEMENT AND RELEASE

Plaintiff, Alina Vazquez ("Plaintiff"), individually and on behalf of the Settlement Class (defined below), and Defendant, Marriott International, Inc. ("Marriott") (collectively, the "Parties"), enter into this Class Action Settlement Agreement and Release ("Agreement") to resolve all claims in this action, subject to the approval of the Court.

**I.**    **Recitals.**

1.    Plaintiff initiated this action by filing a Complaint on January 17, 2017. Plaintiff asserted claims on behalf of herself and a putative class against Marriott under the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 ("COBRA"), alleging that Marriott violated the notice requirements of COBRA. Plaintiff asserted that Defendant provided her and the putative class members whom she seeks to represent with a COBRA notice ("COBRA Notice") that violated 29 C.F.R. § 2590.606–4(b)(4) *et seq.* and 29 U.S.C. § 1166(a). Plaintiff alleged that the COBRA Notice, among other violations, (i) was deficient and violated COBRA because the election notice is written in English; (ii) failed to adequately explain the procedures for electing COBRA

2

continuation coverage; (iii) failed to identify the Plan Administrator; and (iv) was not written in a manner calculated to be understood by the average plan participant. (ECF No. 24 at ¶¶ 3-6). Plaintiff sought, among other relief, (i) a declaration that the COBRA Notice violated ERISA; (ii) equitable relief pursuant to Section 502(a)(3) of ERISA; (iii) an award of statutory penalties pursuant to 29 U.S.C. §1132(c)(1) and 29 C.F.R. §2575.502c-1 for herself and each putative Class member who was sent an alleged defective COBRA; and (iv) an order that Defendant provide Plaintiff and the putative class members with COBRA coverage. (ECF No. 24 at p. 18).

2.      Marriott responded to the Complaint on June 14, 2018 by denying certain allegations, including that the alleged COBRA notice was defective in any way and denied having violated any of the COBRA provisions cited in the Complaint. Marriott also raised affirmative defenses, including those directed at Plaintiff's class allegations – that Plaintiff is an inadequate class representative, the lack of numerosity, typicality, commonality, and that individual issues predominate over those typical of the class. Marriott further raised defenses, including failure to exhaust administrative remedies, failure to tender COBRA premium payment, the failure to mitigate damages, the failure to assert a cognizable cause of action, good faith defense, Plaintiff's lack of injury, the failure to satisfy jurisdictional prerequisites and exhaust administrative remedies, the COBRA Notice having met the applicable legal standards, and injunctive relief as not appropriate in that Plaintiff had an adequate remedy at law.

3.      This case was heavily litigated for more than two years. The original complaint was filed on January 17, 2017. (Doc. 1). The Amended Complaint was filed on April 3, 2017 (Doc. 24). Defendant filed its Motion to Dismiss the Amended Complaint on April 24, 2017, which the Court denied on August 25, 2017. Following the Parties' unsuccessful mediation, held on November 7, 2017 with mediator Rodney Max, Plaintiff filed her motion seeking class certification on November 30, 2017. (Doc. 47).

4.      During late 2017 and through the fall of 2018 the Parties engaged in exhaustive discovery efforts, including nine depositions, exchanging thousands of pages of documents, third-party written discovery and depositions, and even expert witness discovery.  Then, on August 7, 2018, this Court granted Plaintiff's motion for class certification.  (Doc. 61).  Subsequently, Defendant petitioned the Eleventh Circuit for permission to appeal the class certification.  The Eleventh Circuit denied the Defendant's petition for permission to appeal the class certification on October 17, 2019.  (Doc. 66).  On December 6, 2018, this Court conducted a review of the Parties' Long Form Notice and Short Form Notice, (Doc. 82-1 and 82-2) and approved the Notice of Pendency of Class Action and the Class Action Summary Notice for distribution to the putative class members.  (Doc. 92).

5.      Both parties filed motions for summary judgment (Docs. 70, 73), opposition briefs (Docs. 83, 86), and reply briefs.  (Docs. 93, 94).  Plaintiff also filed an unsuccessful *Daubert* motion seeking to exclude Defendant's expert witness.  Following summary judgment briefing, the Parties submitted their Joint Pretrial Statement.  (Doc. 97).  Each side also submitted a trial brief (Docs. 102, 104), with trial originally set for trial April 29, 2019.

6.      Trial was re-scheduled for future date by Court order dated April 24, 2019.  (Doc. 113).  Before a new trial was set the Court granted Plaintiff's request for a court-ordered settlement conference before the presiding Magistrate Judge.  That settlement conference was scheduled for November 7, 2019.  In the weeks leading up to Court-ordered settlement conference counsel for both parties actively engaged in settlement discussions.  A potential class-wide resolution was reached on or about September 25, 2019, for which the Parties now seek preliminary court approval.

7.      Subsequently, the Parties prepared and now enter into this Agreement, which memorializes in full the terms of the Parties' amicable resolution of this case.

8.     Plaintiff's counsel, who have substantial experience representing class representatives and prosecuting class actions, have investigated the law and facts relating to the claims asserted in the Complaint.  Based on their experience in representing class representatives and litigating class action cases, Plaintiff's counsel has concluded that this Settlement is fair and reasonable and in the best interests of the Settlement Class.  Plaintiff's counsel has given due consideration to the benefits of amicably resolving this case as described herein and the risks and delays associated with further litigation.

9.     Marriott expressly denies that it has engaged in any wrongdoing and denies that the COBRA Notice is deficient.  By entering into this Agreement, Marriott does not admit, nor concede any fault or liability in connection with any facts or claims that have been or could have been alleged against it in this action.  Marriott denies that it has any liability whatsoever to Plaintiff or any members of the Settlement Class.  Marriott has entered into this Agreement solely to purchase peace and in recognition of the substantial expense and burden of continued litigation, the substantial period of time required to arrive at a judicial resolution of the issues presented, and the concomitant inconvenience, distraction, and disruption to its business operations.

10.    Subject to the approval of the Court, the Parties propose to settle this Action on the terms set forth this Agreement.

**II.     Definitions.**

As used in this Agreement, capitalized terms and phrases not otherwise defined have the meanings provided below:

11.    Action or Lawsuit: the above-captioned action, *Vazquez v. Marriott International, Inc.*, Case No. 8:17-cv-00116-MSS-SPF, United States District Court, Middle District of Florida, Tampa Division.

12.     Agreement or Settlement or Settlement Agreement: this Class Action Settlement Agreement and Release.

13.     Class Counsel: Wenzel Fenton Cabassa, P.A. and Chad Justice of Justice for Justice, P.A.

14.     Class Notice Date: the date that Notices of Settlement are initially mailed to Settlement Class Members.

15.     Class Period for the Class:

All participants are beneficiaries in the Marriott International, Inc. Health & Welfare Plan who: (1) were sent a COBRA notice by Defendant, in the form attached to the Motion for Class Certification as Exhibit A, during the applicable four-year statute of limitations period as a result of a qualifying event, as determined by Defendant, and (2) did not elect continuation coverage.

16.     Class Representative or Plaintiff:  Alina Vazquez.

17.     COBRA: the Consolidated Omnibus Budget Reconciliation Act of 1985, including all regulations promulgated and applicable case law thereunder.

18.     COBRA Coverage: continuing health and welfare insurance coverage provided under COBRA.

19.     COBRA Notice: the notice regarding the right to elect COBRA Coverage provided by or on behalf of Marriott to the Settlement Class (as defined below) in the form at issue in the Action.

20.     Court: the U.S. District Court for the Middle District of Florida, Tampa Division.

21.     Deadline to Opt Out or Object: the date the Court establishes as the deadline by which Settlement Class Members must postmark a written notice of their intent to opt out of the Settlement and by which any objections to the Settlement must be filed with the Court. Settlement

Class Members shall have sixty (60) days after the Notice of Settlement is mailed to opt out of or object to the Settlement.

22.    Defendant or Marriott: The named defendant in this lawsuit.

23.    Effective Date: means the first day after the first date on which all of the following have occurred: a) all Parties have executed this Agreement; b) the Court has preliminarily approved this Agreement; c) reasonable notice has been given to the Settlement Class Members, including providing them an opportunity to opt out, or object to the Settlement; d) the Court has a held a final approval hearing, entered a final Order approving the Agreement, awarded the Plaintiff any incentive award, and awarded Class Counsel its reasonable attorneys' fees and costs; and, e) only if there are written objections filed before the Final Approval Hearing and those objections are not withdrawn or overruled, the last of the following events to occur:

> First, if no appeal of the Final Approval Order is filed by a timely objector, then the date on which objector's time to appeal the Final Approval Order has expired with no appeal;

> Second, if an appeal of the Final Approval Order is filed by a timely objector, then after the Final Approval Order is affirmed by the appellate court, the date on which all applicable deadlines for filing any motions for rehearing or further appeal have expired without any such motion or further notice of appeal having been filed or any such motion for further appeal has been resolved with no possibility of subsequent appeal.

> Finally, if no objector timely objects, the Effective Date will be the date that is 10 days after entry of the Final Approval Order provided that date is not a Saturday, Sunday or federal holiday in which event the Effective Date will be the next business day.

If there are no objections filed the Effective Date is the date the Court has a held a final approval hearing, entered a final Order approving the Agreement, awarded the Plaintiff any incentive award, and awarded Class Counsel its reasonable attorneys' fees and costs.

24.    Final Approval Hearing: the hearing to be conducted by the Court, following the Court's preliminary approval of this Settlement, dissemination of the Notice of Settlement to the

Settlement Class distributed by the Settlement Administrator, and required notices under the Class Action Fairness Act ("CAFA") distributed by the Settlement Administrator, at which time Plaintiff will request (and Defendant will not oppose) the Court to finally approve the fairness, reasonableness and adequacy of the terms of this Settlement and to enter a Final Approval Order.

25.     <u>Final Approval Motion:</u> Plaintiff's unopposed motion seeking final approval of this Settlement.

26.     <u>Final Approval Order:</u> the Court's order granting final approval of this Settlement on the terms provided herein, or as the same may be modified by subsequent written mutual agreement of the Parties.

27.     <u>Gross Settlement:</u> the total amount that Defendant shall pay in settlement of this Action pursuant to this Agreement.

28.     <u>Net Settlement Proceeds:</u> the amount of money remaining after the Gross Settlement is reduced by the following amounts, none of which Marriott opposes:

a.     any service award to the Plaintiff that the Court approves up to $5,000;

b.     any award of Class Counsel attorneys' fees up to 33.33% of the total Gross Settlement, plus costs;

c.     Court-approved costs of the settlement administration process;

d.     All other expenses of any type, including, but not limited to, service payments and mediation fees.

29.     <u>Notice of Settlement:</u> the Notice of Class Action Settlement approved by the Court in its Preliminary Approval Order, which shall be sent to the Settlement Class Members by U.S. Mail.

30.     <u>Parties:</u> Plaintiff on behalf of herself and as Class Representative and Defendant, Marriott.

31.    Preliminary Approval Motion: Plaintiff's unopposed motion seeking preliminary approval of this Settlement.

32.    Preliminary Approval Order: the Court's order preliminarily approving this Settlement.

33.    Released Parties: (i) Marriott, (ii) Marriott International, Inc. Health & Welfare Plan and each of its fiduciaries; (iii) Marriott's current and former third party COBRA notice providers (including Alight Solutions.), (iv) Marriott's third party health care provider, (v) its outsourced third party COBRA administrator, if any (vi) any entity that was involved in any way with the drafting or delivery of the COBRA notice as defined herein, and (vii) each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns.

34.    Settlement Class: class (as more specifically defined above) certified pursuant to Fed. R. Civ. P. 23 for settlement purposes only, consisting of approximately 19,701 members who were sent the COBRA Notice, or should have been sent the COBRA Notice, by or on behalf of Marriott at any time during the class period described herein who did not elect continuation of coverage, excluding any individuals who timely file a valid written notice of intent to opt out of the Settlement.

35.    Settlement Class Members: any individual who is a member of the Settlement Class.

36.    Settlement Account: the account that is established by the Settlement Administrator for purposes of administering monetary relief under this Agreement.

37.     Settlement Administrator: American Legal Claims Services, LLC, a third-party settlement administrator selected and retained by the Parties for purposes of administering the Settlement and mailing the Notice of Settlement and Settlement Payments to Settlement Class Members.

38.     Settlement Fund Payor: The named defendant in this lawsuit, Marriott International, Inc.

39.     Settlement Payment: an equal portion of the Net Settlement Proceeds that each Settlement Class Member shall be entitled to receive, payable by check from the Settlement Administrator, pursuant to this Agreement.

**III.     Monetary Benefits to the Settlement Class.**

40.     Settlement Account.  Within ten (10) days of the Effective Date, the Settlement Administrator shall establish a Settlement Account for purposes of administering monetary relief under this Agreement, and shall provide Class Counsel and Marriott's counsel with any information relating to the Settlement Account that is reasonably necessary for the Settlement Fund Payor to fund the Settlement Account, including but not limited to a properly executed Form W-9.

41.     Funding of Settlement Account.  Within fifteen (15) days of the Effective Date, Marriott shall deposit a sum total of Two Hundred Fifty Thousand Dollars and No Cents ($250,000.00) into the Settlement Account, which sum may be paid in one or more deposits to the Gross Settlement Account, which shall establish the Gross Settlement and be used by the Settlement Administrator to pay Settlement Class Members and to pay any amounts approved by the Court for Plaintiff's attorneys' fees and costs, expenses of settlement administration, and any class representative service award.

42.     <u>Settlement Payments.</u>  The Net Settlement Proceeds, *i.e.,* the amount remaining in the Settlement Account after deduction of any and all amounts approved by the Court for Plaintiff's attorneys' fees and costs, and expenses of settlement administration, and any class representative service award, shall be distributed to Settlement Class Members on a pro rata basis in the form of individual settlement checks.  Each Settlement Class Member will receive an equal pro rata portion of the Net Settlement Proceeds.

43.     <u>Manner of Distribution.</u>  The Settlement Administrator shall send the Settlement Payments to Settlement Class Members by U.S. Mail within thirty (30) days after Marriott has funded the Settlement Account.  For purposes of this mailing, the Settlement Administrator shall use the address information that Marriott provides for each Settlement Class Member in accordance with this Agreement, subject to appropriate updating of addresses by cross-referencing the National Change of Address Database. If any Settlement Payment is returned by the U.S. Postal Service with a forwarding address before the check's expiration date, the Settlement Administrator will promptly re-mail the check to the forwarding address.  If the Settlement Payment is returned without a forwarding address, the Settlement Administrator shall make reasonable efforts to obtain a current address for the pertinent Settlement Class Member, and the Settlement Administrator shall re-mail the check if a current address is obtained before the check's expiration date.

44.     <u>Deadline for Cashing Checks.</u> Each Settlement Class Member shall have sixty (60) Days from the date which appears on the face of check issued to him/her to negotiate his/her settlement check.  If any funds remain in the Settlement Account after the 60-day deadline for Settlement Class Members to negotiate their settlement checks as a result of uncashed or undeliverable checks, the Settlement Administrator shall retain such funds in the Settlement Account for a period of ten (10) days to allow for the processing and payment of any checks that

may still be in the bank's check clearing process.  Thereafter, the Settlement Administrator shall close out the Settlement Account by issuing a check for any remaining balance as a *cy pres* award to be paid to Bay Area Legal Services.

45.     Payments Not Considered Wages.  The Parties agree that the Settlement Payments are not wages and shall not be treated as such for tax purposes.  The Settlement Administrator shall arrange for the preparation and filing of any tax reports, forms, and returns required to be filed, prepared or disseminated by the Settlement Account, and will send Class Counsel copies of any such filings and receipts of payment in a timely manner.  Neither the Parties nor their respective counsel shall have any liability or responsibility of any sort for filing any tax returns or paying any taxes with respect to the Settlement Account.

**IV.     Attorneys' Fees and Expenses;  Costs of Administration.**

46.     Unopposed Motion for Attorneys' Fees and Expenses.  At least ten (10) days prior to the Final Approval Hearing, Plaintiff will seek an order from the Court awarding Class Counsel their reasonable attorneys' fees in the sum total of Thirty-Three  and  One-Third Percent (33.33%) of the Gross Settlement and, in addition, out-of-pocket expenses incurred in this Action, which, upon approval, will be paid from the Settlement Account.  Marriott agrees that it will not oppose Plaintiff's application for attorneys' fees and costs, up to 33.33% of the Gross Settlement, plus costs.  The cost of notice for administration shall be paid out of the Gross Settlement and will also reduce the Settlement Class Members' claims proportionally to the cost.

47.     Payment of Approved Attorneys' Fees and Expenses.  Within ten (10) days of the Settlement Account being funded, the Settlement Administrator shall pay attorneys' fees and expenses to Class Counsel, pursuant to the terms of the Court order granting such award, by wire

transfer or check from the Settlement Account as directed by Class Counsel to the trust account of Wenzel Fenton Cabassa, P.A.

48.   Cost of Administration.  The Parties agree that all costs of administration shall be paid out of the Gross Settlement and not by Marriott nor by Plaintiff's counsel.

**V.   Service Award.**

49.   Service Award.  At the same time that Plaintiff and Class Counsel file a Motion for Attorneys' Fees and Expenses, they may seek approval of a class representative service award of five thousand dollars ($5,000.00).  In the event Plaintiff's request for a service award is approved by the Court, the Settlement Administrator shall issue a check from the Settlement Account made payable to Plaintiff at the same time that Class Counsel's attorneys' fees and expenses are paid. Marriott agrees not to oppose a request for the service award for Plaintiff, as awarded by the Court. Plaintiff and Class Counsel agree not to seek a service award in excess of the above amount.

**VI.   Release of Claims.**

50.   Plaintiff and Class Release.  On the Effective Date, and in consideration of the benefits provided by this Agreement, the sufficiency of which has been determined by the Court and is hereby acknowledged by the Parties, Plaintiff and all Settlement Class Members who have not opted out of the Settlement Class shall fully and forever release, waive, acquit, and discharge Marriott, and each of the Released Parties from any and all claims, whether in law or at equity, arising out of the facts alleged in the Amended Complaint filed in the Action, including but not limited to any and all claims relating to any COBRA Notice provided by or on behalf of Marriott or the Released Parties that have been or could have been asserted in this Action, any claims for COBRA Coverage, and any and all claims for equitable relief.

## VII.   <u>Notice and Right to Opt Out or Object.</u>

51.    <u>Notice to Settlement Class Members.</u>  The Settlement Administrator shall utilize the Court-approved short and long form of the Notice of Settlement, which forms will be the only ones utilized by the Administrator. The Settlement Administrator shall also provide the proposed form of the long form of notice that will be posted on the Settlement Administrator's website along with a list of other pertinent documents which will be available to Settlement Class Members on the Settlement Administrator's website.  Moreover, within ten (10) business days after receiving Court-approval of the format and contents of the short and long form of the Notice of Settlement from the Parties, the Settlement Administrator will send the Short Form Notice of Settlement to all Settlement Class Members via first-class U.S. Mail, postage prepaid in the approved form of envelope, if applicable. The Settlement Administrator shall also make the Long Form of notice available on its website at the time when the Notice of Settlement is mailed to the Settlement Class Members.

52.    <u>Manner of Distributing Notice.</u>  For purposes of distributing the Short Form Notice of Settlement, the Settlement Administrator shall use the address information that Marriott provides for each Settlement Class Member in accordance with this Agreement, subject to appropriate updating by the Settlement Administrator or Class Counsel of addresses by cross-referencing the National Change of Address Database.  If any Notice of Settlement is returned by the U.S. Postal Service with a forwarding address, the Settlement Administrator will promptly re-mail the Notice to the forwarding address provided.  If the Notice of Settlement is returned without a forwarding address, the Settlement Administrator shall make reasonable efforts to obtain a valid address for the pertinent Settlement Class Member, and mail the Notice to the updated address.

53.     Settlement Telephone Number and Talking Points.  Effective on the Class Notice Date, and through the expiration of the period for cashing checks, the Settlement Administrator shall establish a toll-free telephone number with an interactive voice response ("IVR") system that Settlement Class Members may call to obtain further information about the Settlement.

54.     Settlement Website.  Effective on the Class Notice Date, or as soon as thereafter practicable, and through the expiration of the period for cashing checks, the Settlement Administrator or Class Counsel shall establish an active website from which Settlement Class Members can download relevant forms such as the Complaint, the Notice of Settlement, the Term Sheet, the Settlement Agreement, and ECF-filed *(i.e.,* publicly-available) copies of the pleadings in support of approval of the Settlement, Plaintiff's motion for attorneys' fees and expenses, Plaintiff's motion for class representative service award, papers reflecting costs of administration, and the long form of notice.

55.     Right to Opt Out.  Class Members who wish to exclude themselves from the Settlement must submit a written statement requesting exclusion from the Settlement ("opt-out request"), postmarked no later than the Deadline to Opt Out or Object. Such opt-out request must state the case name and number, contain the name, address, telephone number,  and email address of the Settlement Class Member requesting exclusion, and be personally signed by that Settlement Class Member.  The opt-out request must be sent by U.S. Mail to the Settlement Administrator (at the address provided in the Notice of Settlement), and must be timely postmarked on or before the Deadline to Opt Out or Object.  The Settlement Administrator shall provide the Parties' Counsel (as specified below) with copies of all opt-out requests within five (5) business days after the Deadline to Opt Out or Object.  Any Class Member who timely requests exclusion from the Settlement will not be entitled to any Settlement Payment and will not be bound by this Settlement

or have any right to object, appeal or comment thereon.  No opt-out request may be made on behalf of a group of Class Members.

56.    Objections. Any Settlement Class Member who wishes to object to the Settlement must file a timely written statement of objection with the Clerk of Court,  and mail a copy of that objection with the requisite postmark to the Settlement Administrator (at the address provided in the Notice of Settlement) no later than the Deadline to Opt Out or Object. The Settlement Administrator shall provide the Parties' Counsel (as specified below) with copies of all objections within five (5) business days after the Deadline to Opt Out or Object.  The statement of objection must state the case name and number; specify the basis for the objection; provide the name, address, telephone number, and email address of the Settlement Class Member making the objection; and indicate whether the Settlement Class Member intends to appear at the Final Approval Hearing, either with or without counsel.  In addition, any statement of objection must be personally signed by the Settlement Class Member and, if represented by counsel, then also by counsel.  Any Settlement Class Member who fails to timely object to the Settlement in the manner specified above shall be deemed to have waived any objections to the Settlement and shall be foreclosed from making any objections, whether by appeal or otherwise, to the Settlement.

**VIII.   Settlement Approval.**

57.    Preliminary Approval Motion. As soon as practicable after the Parties execute this Agreement, Plaintiff's counsel will take the lead on preparing a draft of the Preliminary Approval Motion and will coordinate finalizing the motion with input from all Parties.  The Parties agree to collaborate in good faith in the preparation and finalization of the Preliminary Approval Motion. The Preliminary Approval Motion will request that the Court (a) enter an agreed-upon Preliminary Approval Order; (b) certify the Settlement Class for Settlement purposes; (c) appoint Plaintiff as

the named Class Representative and Plaintiff's counsel as Class Counsel for Settlement purposes; (d) authorize distribution of the Notice of Settlement to the Settlement Classes; (e) set a Deadline to Opt Out or Object; and (f) set a date for a Final Approval Hearing, not to occur until at least ninety (90) days after the Court's Preliminary Approval Order.

58.     CAFA Notices.     The Settlement Administrator shall submit the notices required under the Class Action Fairness Act, 28 U.S.C. § 1715, to the applicable state and federal officials within ten (10) days of the filing of the Preliminary Approval Motion.

59.     Final Approval Motion.     At least ten (10) days before the Final Approval Hearing, or on the date set by the Court (if different), Plaintiff shall file an Unopposed Motion for Final Approval Motion. Plaintiff's counsel shall take the lead on preparing a draft of the Final Approval Motion and Final Approval Order and will coordinate finalizing the motion and order with input from Marriott. The Parties agree to collaborate in good faith in the preparation and finalization of the Final Approval Motion and Final Approval Order. Prior to finalizing the Final Approval Motion, the Settlement Administrator shall provide Class Counsel and Marriott's Counsel with a report listing the names and addresses of all Settlement Class Members to whom the Settlement Administrator mailed a Notice of Settlement, and indicating which Settlement Class Members submitted a timely opt out request, if any, and which Settlement Class Members submitted a timely objection, if any (as well as copies of any such opt-outs or objections).

60.     Right to Terminate Settlement.     The Parties shall each have the right to unilaterally terminate this Agreement by providing written notice of their election to do so within ten (10) business days after all of the following have occurred: (a) the Court's refusal to grant preliminary approval of the Settlement after the Parties have attempted to re-submit the Preliminary Approval Motion at least one time addressing any issues raised by the Court as to the first Preliminary

17

Approval Motion and/or Settlement Agreement; (b) the Court's refusal to grant final approval of the Settlement (or if the Final Approval Order agreed to by the Parties is materially modified in a manner unacceptable to either Party); or (c) only if any objection(s) are timely made, and, as a result of said objection, the date upon which the Final Approval Order is reversed, or if the Final Order is materially modified in a manner unacceptable to either Party by the U.S. Court of Appeals for the Eleventh Circuit or the U.S. Supreme Court. If there are no objections, Paragraph 60(d) is inapplicable.

61.     The above notwithstanding, the Parties agree that should any of the conditions set forth in Paragraph 60 occur, the Parties will, within the above-indicated period, meet and confer by telephone in a good-faith attempt to reach agreement on a settlement of this Action.

62.     In addition, Marriott shall have the right unilaterally to terminate this Agreement by providing written notice to Plaintiff's Counsel of its election to do so within ten (10) business days after the Deadline to Opt Out or Object if a total of two hundred (200) or more putative members of the Settlement Classes request exclusion from the Settlement by submitting timely opt-out requests.

63.     <u>Termination of Settlement.</u> If the Settlement is terminated pursuant to Paragraph 60 of this Agreement, the Parties will return to the *status quo,* and the Action shall proceed as if this Settlement had never been negotiated. In particular, it is agreed by the Parties that:

(a)     the Settlement proposed herein shall be of no further force and effect;

(b)     the agreements and definitions in this Settlement Agreement will not be used as evidence or argument to support class certification or the definition of any class in any further litigation, and Marriott will retain all rights to oppose the certification of any class in any further litigation; and with the exception of Paragraph 68, which shall survive the termination of the Settlement, this Settlement Agreement and all negotiations, proceedings and statements relating thereto, and any amendment thereof, shall be null and void and shall be without prejudice to the Parties or the Released Parties, and each Party and

Released Party shall be restored to his, her or its respective position as it existed prior to the execution of this Settlement Agreement.

64.    Settlement Modification.  The Parties may agree by written stipulation of counsel to reasonable modifications of the timetables set forth in this Agreement or to modifications to this Agreement to effectuate the purpose of this Agreement or to conform to guidance from the Court, without the need to formally amend this Agreement.

65.    Dismissal with Prejudice:  Within five (5) days after the Effective Date, Plaintiff and Marriott agree that they will jointly stipulate to the dismissal with prejudice of the Litigation. Plaintiff and Marriott agree they will request that the Court retain jurisdiction to enforce the Settlement Agreement.

## IX.    Other Provisions.

66.    Mediation; Dispute Resolution.  In the event that the Parties disagree upon the terms of this Settlement Agreement or as to any matter concerning the administration of this Class Action Settlement, the Parties agree to use their best efforts to amicably resolve the dispute and to participate in mediation before an agreed upon mediator prior to seeking relief from the Court.

67.    Authority.  The signatories below represent that they are fully authorized to enter into this Agreement.  All class members who do not opt out are bound by the signature of the Plaintiff as to any settlement and/or judgment.

68.    Best Reasonable Efforts and Mutual Full Cooperation.  The Parties agree to fully cooperate with one another to accomplish the terms of this Agreement, including, but not limited to, executing such documents and taking such other actions as may be reasonably necessary to implement the terms of this Settlement. The Parties will use their best reasonable efforts, including all efforts contemplated by this Agreement and any other efforts that may become necessary as

ordered by the Court, or otherwise, to effectuate this Agreement and to secure the Court's approval of the Settlement.

69.     Communications with Settlement Class Members.  The Parties and their respective counsel shall not discourage any Settlement Class Member from participating in this Settlement or lobby or encourage any Settlement Class Member to opt out of the Settlement or object to the Settlement.

70.     Binding Effect on Successors and Assigns.  This Agreement will be binding upon and will inure to the benefit of the Parties and their respective heirs, trustees, executors, administrators, successors, and assigns.

71.     Construction.  The Parties agree that the terms and conditions of this Agreement are the result of lengthy, arms'-length negotiations between the Parties, and that this Agreement will not be construed in favor of or against any party by reason of the extent to which any party or party's counsel participated in the drafting of this Agreement.

72.     Entire Agreement.   This Settlement Agreement and the attached Exhibits, incorporated herein by reference, constitute the entire agreement of the Parties with respect to the subject matter hereof and supersedes all prior negotiations, communications, and agreements between the Parties, and may not be amended, or any of their provisions waived, except by a writing executed by all Parties hereto.  The Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of the Settlement Agreement and to exercise their commercially reasonable best efforts to accomplish the foregoing terms and conditions of the Settlement Agreement. The Parties intend this Settlement Agreement to be a final and complete resolution of all disputes between them, relating to or arising out of, the subject

matter of the Action.  Accordingly, the Parties agree that the terms of the Settlement Agreement represent a good-faith settlement, reached voluntarily based upon adequate information and after consultation with experienced counsel. The Parties also agree Plaintiff's attorneys' fees and costs were not discussed until all other terms were reached.

73.     Governing Law.  This Settlement Agreement shall be governed by the laws of the State of Florida without giving effect to the conflict of laws or choice of law provisions thereof, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

74.     Venue.  The Parties hereby agree that any action brought upon the enforcement of this Agreement shall be commenced or filed in the United States District Court for the Middle District of Florida, Tampa Division.

75.     Extensions.  The Parties may agree, in writing, subject to the approval of the Court where required, to reasonable extensions of time to carry out the provisions of this Settlement Agreement.

76.     Effect of Captions and Headings.  Paragraph titles, captions, or headings in this Agreement are inserted as a matter of convenience and for reference purposes only, and in no way define, limit, extend, or describe the scope of this Agreement or any provision in it. Each term of this Agreement is contractual and is not merely a recital.

77.     Notices.  Unless otherwise specifically provided in this Agreement, any notices or communications to the Parties relating to this Settlement should be sent to their respective counsel in writing, and will be deemed to have been duly given as of the third business day after mailing by U.S. registered or certified mail, return receipt requested or as of the date of delivery confirmation by Federal Express, United Parcel Service or equivalent express carrier, as follows:

**Plaintiff's Counsel:**

Luis A. Cabassa, Esq.
Brandon J. Hill, Esq.
Wenzel Fenton Cabassa, P.A.
1110 N. Florida Ave., Suite 300 Tampa, FL 33602

Chad Andrew Justice
1205 N. Franklin St. Suite 326
Tampa, FL 33602

**Defendant's Counsel:**

Fredrick H.L. McClure
Amanda E. Reagan
DLA PIPER LLP (US)
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233

Mark Muedeking
Ian C. Taylor
DLA Piper LLP (US)
500 8th Street, NW
Washington, DC 20004

78.    <u>Counterparts.</u> This Agreement may be executed in one or more counterparts. All executed copies of this Agreement and photocopies thereof (including facsimile and/or emailed copies of the signature pages), shall have the same force and effect and shall be as legally binding and enforceable as the original.

79.    <u>Class Signatories.</u> The Parties agree that because the Settlement Class Members are so numerous, it is impossible and impracticable to have each Settlement Class Member execute this Agreement. Therefore, the Notice will advise all Settlement Class Members of the binding nature of the release and will have the same force and effect as if executed by each Class Member.

80.    <u>Authority of Court.</u> The administration and implementation of the Settlement as embodied in this Settlement Agreement shall be under the authority of the Court. The Court shall retain jurisdiction to protect, preserve, and implement the Settlement Agreement, including, but

not limited to, enforcement of the Release contained in the Agreement. The Court expressly retains jurisdiction in order to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

**X.      Execution.**

81.      The undersigned, being duly authorized, have caused this Settlement Agreement to be executed on the dates shown below and agree that it shall take effect on Effective Date, as defined in this Agreement, and provided that it has been executed by all Parties.

_____
DATE

November 8, 2019
_____
DATE

_____
ALINA VAZQUEZ

Vice President & Assistant General Counsel
MARRIOTT INTERNATIONAL, INC.

11/11/19
_____
DATE

_____
ALINA VAZQUEZ

_____
DATE

_____
MARRIOTT INTERNATIONAL, INC

24