# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

**ALINA VAZQUEZ, individually
and on behalf of all others
similarly situated,**

    Plaintiff,

v.                                                  Case No.: 8:17-cv-116

**MARRIOTT INTERNATIONAL, INC.,**

    Defendant.

_____/

## JOINT MOTION FOR FINAL APPROVAL OF CLASS SETTLEMENT
## AND SUPPORTING MEMORANDUM OF LAW

Class Representative Alina Vazquez ("Vazquez" or "Plaintiff"), and Defendant, Marriott International, Inc., ("Marriott" or "Defendant") pursuant to Fed.R.Civ.P. 23, file Joint Motion for Final Approval of the Parties' Class Action Settlement. On November 21, 2019, the Court granted the Parties' Joint Motion for Preliminary Approval of the class-wide settlement of the COBRA claims asserted against Defendant. (*See* Doc. 124). Notice was sent to 19,000+ Class Members and the reaction to the Settlement is overwhelmingly positive. As of the date of this filing, not a single objection has been made to the Settlement reached with Defendant to date, and only ten asked to be excluded from the settlement. In sum, little has changed since the Court's Order granting the Parties' Motion for preliminary approval of the settlement, confirming that the settlement is fair, reasonable, adequate, and warrants final approval. As a result, the Parties seek entry of an Order granting final approval of their class action settlement. A proposed Order is attached as Exhibit A. In further support thereof, the Parties states as follows:

I. **BACKGROUND.**

A. **Plaintiff's Allegations and Case Procedural History.**

This is a putative class action brought by Plaintiff against Defendant under 29 C.F.R. § 2590.606–4(b)(4) *et seq.* and 29 U.S.C. § 1166(a).  The lawsuit generally alleges Defendant provided Plaintiff and other class members with a deficient COBRA Notice.  More specifically, Plaintiff alleged that, in violation of 29 C.F.R. § 2590.606–4(b)(4) *et seq.*, the COBRA Notice failed to: (i) provide the information in Spanish; (ii) adequately explain the procedures for electing coverage; (iii) identify the Plan Administrator; and, finally, (iv) be written in a manner calculated to be understood by the average plan participant.  As a result of the alleged violations in the Complaint, Plaintiff sought statutory penalties, injunctive relief, attorneys' fees, costs and expenses on behalf of herself and all others similarly situated.  Plaintiff later chose not to pursue the Spanish-language claim.  Defendant denies all allegations.

This case was heavily litigated for more than two years.  The original complaint was filed on January 17, 2017.  (Doc. 1).  The Amended Complaint was filed on April 3, 2017 (Doc. 24). Defendant filed its Motion to Dismiss the Amended Complaint on April 24, 2017, which the Court denied on August 25, 2017. Following the Parties' unsuccessful mediation, held on November 7, 2017 with mediator Rodney Max, Plaintiff filed her motion seeking class certification on November 30, 2017.  (Doc. 47).

During late 2017 and through the fall of 2018 the Parties engaged in exhaustive discovery efforts, including nine depositions, exchanging thousands of pages of documents, third-party written discovery and depositions, and even expert witness discovery.  Then, on August 7, 2018, this Court granted Plaintiff's motion for class certification.  (Doc. 61).  Subsequently, Defendant petitioned the Eleventh Circuit for permission to appeal the class certification. The Eleventh Circuit denied the Defendant's petition for permission to appeal the class certification on October

17, 2019. (Doc. 66). On December 6, 2018, this Court conducted a review of the Parties' Long Form Notice and Short Form Notice, (Doc. 82-1 and 82-2) and approved the Notice of Pendency of Class Action and the Class Action Summary Notice for distribution to the putative class members. (Doc. 92).

Both parties filed motions for summary judgment (Docs. 70, 73), opposition briefs (Docs. 83, 86), and reply briefs (Docs. 93, 94). Plaintiff also filed an unsuccessful *Daubert* motion seeking to exclude Defendant's expert witness. Following summary judgment briefing, the Parties submitted their Joint Pretrial Statement (Doc. 97). Each side also submitted a trial brief (Docs. 102, 104), with trial originally set for trial April 29, 2019.

Trial was re-scheduled for a future date by Court order dated April 24, 2019. (Doc. 113). Before a new trial was set the Court granted Plaintiff's request for a court-ordered settlement conference before the presiding Magistrate Judge. That settlement conference was scheduled for November 7, 2019. In the weeks leading up to Court-ordered settlement conference counsel for both parties actively engaged in settlement discussions. A potential class-wide resolution was reached on or about September 25, 2019, for which the Parties now seek preliminary court approval.

### B.     **Defendant's Defenses**.

Defendant presented numerous defenses to Plaintiff's allegations, including defenses to class certification, defenses to the merits of the case, defenses to damages and an Article III standing defense. Specifically, Defendant denied, and continues to deny, that it violated 29 U.S.C. § 1166(a) and 29 C.F.R. § 2590.606-4 with regard to the Named Plaintiff and/or any putative class members because the COBRA Notice complied with the notice requirements under

ERISA. Furthermore, Defendant denies that Plaintiff suffered any damages from the alleged inadequate Notice.

As part of the Settlement Agreement, Defendant specifically denies that it engaged in any wrongdoing and asserts that the COBRA Notice is fully compliant with ERISA and COBRA, does not admit or concede any actual or potential fault, wrongdoing or liability in connection with any facts or claims that have been alleged against it in the Action, denies that the claims asserted by Named Plaintiff are suitable for class treatment other than for settlement purposes, and denies that it has any liability whatsoever. However, Defendant agreed to resolve this action through settlement because of the substantial expense of litigation, the length of time necessary to resolve the issues presented in this case, the inconveniences involved, and the disruption to its business operations.

### C. The Court's Order granting Preliminary Approval of the Settlement.

On November 21, 2019, this Court issued an order preliminarily approving the Class Action Settlement Agreement ("Settlement" or "Settlement Agreement") between Plaintiff, on behalf of the Settlement Class, and Defendant. (Doc. 34.) In that Order, the Court found that settlement terms are "fair, reasonable, and adequate." (*Id*. at ¶ 7.) Following entry of that Order notice was mailed out to the Class Members. The Settlement Class Administrator sent a notice of settlement via first class mail to all Settlement Class Members and <u>zero</u> objected to the settlement thus far. Only ten asked to be excluded. Thus, the reaction by the Class Members could not have been more positive. Accordingly, Plaintiff respectfully requests that this Court grant this Motion for Final Approval.

### D. The Class Member's Reactions to the Settlement.

The Settlement Claims Administrator, American Legal Claim Services, LLC ("ALCS"),

sent the short form Class Notice approved by the Court to each of the Settlement Class Members via first-class mail. A total of 19,122 Class Notices were mailed to members of the Settlement Class. (*See* Exhibit B, Declaration of Keith Salhab from ALCS, ¶ 9) (hereinafter "Salhab Dec."). The Settlement Class Members overwhelmingly accepted the Settlement by agreeing to remain in the Settlement Class and to participate in the Settlement. Over 96.63 % Settlement Class Members received the Class Notice and none have objected as of the date this Motion was filed.

The Class Notice provided Settlement Class Members with all required information relating to the Settlement including: (1) a summary of the lawsuit and an overview of the nature of the claims; (2) the definition of the Settlement Class certified by the Court; (3) a clear description of the material terms of the Settlement; (4) an explanation of the claims being released; (5) an explanation of Settlement Class Members' rights; (6) instructions as to how to object to the Settlement and a date by which Settlement Class Members must object; (7) the date, time, and location of the final approval hearing; (8) the internet address for the settlement website and the toll-free number from which Settlement Class Members could obtain additional information about the Settlement; (9) identification of Class Counsel and information regarding the compensation that they would seek pursuant to the Settlement Agreement; and, (10) identification of the Class Representatives and information regarding the service award she would seek pursuant to the Settlement Agreement.

The Settlement website provided Class Members with access to the following documents: (i) the long form of Class Notice which explained the proposed Settlement in detail; (ii) Class Action Complaint; (iii) Class Settlement Agreement and Release, with exhibits; (vi) Joint Motion for Preliminary Approval of Class Action Settlement, with exhibits; and (vii) Preliminary Approval Order. The long form of notice included a set of Frequently Asked Questions

("FAQs") and answers about the Settlement.

ALCS also set up a toll-free telephone support line that Class Members could call to obtain additional information. Thus, Notice to the Class Members was sufficient and consistent with the Court's Order granting Preliminary Approval.

## II. **OVERVIEW OF SETTLEMENT TERMS.**

For the reasons set forth in the Court's Order granting the Parties' Joint Motion for Preliminary Approval, and as set forth below, the Settlement is fair, reasonable and adequate. More specifically:

- The Settlement was the result of arm's-length negotiations following contested litigation. The conclusion that the Settlement was fairly negotiated at arm's length is buttressed by the fact that the Settlement was reached after significant litigation, including contested class certification, an appeal of the Court's certification of the class, numerous depositions, and dispositive motion briefing

- Unclaimed settlement funds will not revert to Defendant.  The Settlement Agreement provides that unclaimed funds (uncashed checks and those sent but returned for which no available forwarding address can be located) will revert to Bay Area Legal Services, Inc., as a cy-pres recipient, subject to Court approval;

- The Settlement provides for immediate monetary and prospective relief within the range of similar COBRA notice class action settlements;[1]

- The Settlement is not contingent upon the Court's approval of Class Counsel's attorneys' fees or costs, or any service/incentive award to the named Plaintiff;

---

[1] Notably, a similar settlement agreement was recently approved for alleged deficient COBRA notice forms in *Valdivieso v. Cushman & Wakefield, Inc.,* Case No. 8:17-cv-00118-SDM-JSS (M.D. Fla. 2018); *see also Carnegie v. FirstFleet, Inc. of Tennessee, Inc.*, Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. 2019); *Hicks v. Lockheed Martin Corp.,* 8:19-cv-00261-JSM-TGW (M.D. Fla. 2019) (Doc. 41).

- The Class Release in the Settlement Agreement is narrowly-tailored to apply only to claims like those asserted in the lawsuit;

- The Settlement Agreement provided for direct notice to Settlement Class Members via U.S. First-Class Mail;

- Settlement Class Members were not required to file claim forms in order to receive settlement checks, making this a "claims paid" settlement;

- The Settlement Fund created by Defendant will be a fully-funded common fund consisting of $250,000.00;

- The Settlement provided the opportunity for potential Settlement Class Members to object to the Settlement within sixty (60) days of notice being mailed (none did);

- If any Settlement Class Members fail to tender their Settlement Payment checks within the period provided in the Settlement Agreement, any funds remaining in the Settlement Account (after deduction for all Court approved deductions) will revert and be paid exclusively to Bay Area Legal Services, Inc., upon Court approval.

A. **The Settlement Provides for Significant Relief.**

Provided final approval is granted by the Court, Defendant has agreed to fund a common fund in the amount of $250,000.00, which will be used to compensate Settlement Class Members on a *pro rata* portion of the settlement fund. This amount includes the anticipated amount that Defendant would pay if every Class Member participated in the settlement and received a settlement payment, class counsel's fees, costs and expenses, settlement administration expenses, and service payments.

The net proceeds of the Settlement Fund will be distributed evenly among all Settlement Class Members on a *pro rata* basis and will be received on a claims paid basis without the need

to fill out, or submit, a claim form. The gross payment per Settlement Class Member is approximately $13 per Settlement Class Member. If the requested amounts are granted for attorneys' fees, administrative expenses, and a Class Representative Service Award, the parties anticipate that each Settlement Class Member will receive a pro rata net payment of approximately $5.00. The Settlement Administrator will send a Settlement Payment by U.S. Mail to each Settlement Class Member.

      B.    **<u>Release of Claims</u>**.

In exchange for the monetary and any other relief set forth in the Settlement Agreement, Settlement Class Members will release Defendant (i) Marriott, (ii) Marriott International, Inc. Health & Welfare Plan and each of its fiduciaries; (iii) Marriott's current and former third party COBRA notice providers (including Alight Solutions.), (iv) Marriott's third party health care provider, (v) its outsourced third party COBRA administrator, if any (vi) any entity that was involved in any way with the drafting or delivery of the COBRA notice as defined herein, and (vii) each of their affiliates, parent companies, subsidiaries, predecessors, successors, corporate family members, officers, directors, partners, employees, attorneys, agents, insurers, shareholders, representatives, trustees, principals, and assigns.

Settlement Class Members' claims, if any, which are unrelated to the facts and/or causes of action alleged in this cause are not released by the terms of the Settlement Agreement.

      C.    **<u>Notice of Settlement, Claims Process, and Settlement Administration</u>**.

The Parties utilized a private, third-party vendor, to administer notice in this case. The Parties have also agreed that all fees and expenses charged by the Administrator shall be paid from the common fund.

If the Court grants final approval of the settlement, Defendant will transfer the full amount of the settlement common fund to the Settlement Administrator within the time frame set forth in the Settlement Agreement. Settlement checks will be mailed to all Class members within the time frame set out in the agreement after receipt by the Settlement Administrator of the Common Fund monies. To the extent any money remains in the fund after these distributions and after Class members have had 60 days to cash their settlement checks, such monies shall be paid (as noted above) as a *cy pres* donation to Bay Area Legal Services, Inc.

### D. Attorneys' Fees and Costs, Class Representative Award and Administration Expenses.

Pursuant to the Settlement Agreement, Class Counsel is authorized to petition the Court for up to 33.33% of the Settlement Amount, plus litigation costs, to be paid from the common fund, which Defendant will not oppose. Class Counsel will file a separate motion seeking approval for fees and costs up to the percentage identified and other limitations set forth in the Settlement Agreement. The Parties have also agreed that Class Representative Alina Vazquez shall have, in addition to her claim provided as a member of the Settlement Class, an additional claim in the sum of $5,000 as a service/incentive award for the services provided to the Settlement Class in connection with the prosecution of this action. The service/incentive award shall come out of the common fund, subject to the Court's approval. Neither settlement approval, nor the size of the settlement fund, is contingent upon the full amount of any requested fees or Class Representative service/incentive award being approved. Finally, Court-approved costs and fees of the Settlement Administrator shall be paid from the common fund.

### III. FINAL SETTLEMENT PROPOSAL.

#### A. The Settlement Meets the Requirements of Rule 23(e) for Final Court Approval.

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval of any settlement agreement that will bind absent class members. This involves a two-step process. *Smith v. Wm. Wrigley Jr. Co.*, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010); *Holman v. Student Loan Xpress. Inc*., 2009 U.S. Dist. LEXIS 113491, at *7 (M.D. Fla. Nov. 19, 2009); "In the first step of the process, a court should make a preliminary evaluation of the fairness of the settlement before directing that notice be given to the settlement class." *Smith*, 2010 U.S. Dist. LEXIS at *5-6. Second, following preliminary approval of the settlement, class members are provided notice of a formal fairness hearing, at which time arguments and evidence may be presented in support of, or in opposition to, the settlement. *Id*. The decision of whether to approve a proposed class action settlement is "committed to the sound discretion of the district court." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir. 1992). In exercising this discretion, courts are mindful of the "strong judicial policy favoring settlement," as well as "the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).

"Settlement agreements are highly favored in the law and will be upheld whenever possible because they are a means of amicably resolving doubts and uncertainties and preventing lawsuits." *Pierre-Val v. Buccaneers Ltd. Partn.*, 2015 U.S. Dist. LEXIS 81518 at *2-3 (M.D. Fla. June 17, 2015) (quoting *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1105 (5th Cir.1977)). Under Rule 23(e)(2), Courts look to whether: (1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate, and (4) the proposal treats class members

equitably relative to each other. This standard is satisfied here and the Court should enter an order granting Final Approval of the Class Action Settlement Agreement.

### 1. The Class Representative and Class Counsel Have Adequately Represented the Class.

There is no question that Alina Vazquez and the undersigned have adequately represented the class. This first Rule 23(e)(2) requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action. *Battle v. Law Offices of Charles W. McKinnon, P.L.*, 2013 U.S. Dist. LEXIS 29263, at *10 (S.D. Fla. Mar. 5, 2013) (*citing Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008).

Here, the adequacy-of-representation requirement has been met. The Named Plaintiff, Alina Vazquez, is adequate given that her interests are equivalent to those of the Settlement Class. She was actively involved in this case from its inception. She participated in written discovery, was deposed by Defendant, and even had her family members deposed by Defendant. There is also no obvious conflict of interest between the Named Plaintiff and the Settlement Class. The Named Plaintiff has the same interest as the Settlement Class Members in prosecuting her claims. She, along with her counsel, secured a $250,000 settlement from a highly-sophisticated Defendant in favor of the class members she seeks to represent.

With respect to Class Counsel, the proposed attorneys have extensive class action experience, as detailed in the attached declarations of Luis A. Cabassa and Brandon J. Hill of Wenzel Fenton Cabassa, P.A.. as well as Chad Justice. In fact, Judge Scriven previously appointed both of the above lawyers as class counsel in *Kohler v. SWF Operations, LLC,* M.D. Fla. Case No.: 8:14-cv-02568-MSS-TGW (July 5, 2016) (Doc. 54). Additionally, the undersigned have been appointed as class counsel in multiple COBRA class action cases,

including most recently in *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (Doc. 34). *See also Valdivieso v. Cushman & Wakefield, Inc.,* M.D. Fla. Case No.: 8:17-cv-00118-SDM-JSS (M.D. Fla. Dec. 7, 2018) (Doc. 92) (appointing undersign as class counsel in a COBRA notice class action), and *Carnegie v. FirstFleet Inc.,* M.D. Fla. Case No.: 8:18-cv-01070-WFJ-CPT (M.D. Fla. June 21, 2019) (Doc. 63) (same). This Court earlier when granting Plaintiff's Motion for Class Certification that the undersigned are "qualified and competent counsel," who together with Plaintiff, have dutifully prosecuted this action. (Doc. 61). Nothing has changed since that determination.

When, as here, the Parties are represented by counsel with significant experience in class-action litigation and settlements and in ERISA cases, and no evidence of collusion or bad faith exists, the judgment of the litigants and their counsel concerning the adequacy of the settlement is entitled to deference. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 532-33 (E.D. Ky. 2010) *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, LLC*, 636 F.3d 235 (6th Cir. 2011) ("in deciding whether a proposed settlement warrants approval, the informed and reasoned judgment of plaintiffs' counsel and their weighing of the relative risks and benefits of protracted litigation are entitled to great deference"); *see, e.g., UAW v. Ford Motor Co.*, 2008 WL 4104329 at \*26 (E.D. Mich. August 29, 2008) ("[t]he endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement."). Thus, the proposed Settlement satisfies Rule 23(e)(2)'s first component, adequacy.

### 2. The Settlement Is the Product of Arm's Length Negotiations Between Experienced Counsel.

The next Rule 23(e)(2) factor is also satisfied because the proposed Settlement is the product of arm's length negotiations during the period of time after significant discovery, motion practice, and only on the eve of trial. This also weighs in favor of approval. *See Gevaerts v. TD*

*Bank, N.A.*, No. 11:14-CV-20744-RLR, 2015 WL 12533121, at *7 (S.D. Fla. Aug. 4, 2015) ("Plaintiffs' counsel was also well-positioned to evaluate the strengths and weaknesses of Plaintiffs' claims, as well as the appropriate basis upon which to settle them, as a result of similar class action cases Plaintiffs' counsel has brought in the past.")

The proposed Settlement, and the record in this case, show that the Settlement Agreement was the product of extensive and detailed arm's-length, and at times contentious, negotiations between the Parties and their counsel during the three years this case has been pending.

Moreover, as stated above, all counsel involved in the negotiations are experienced in handling class action litigation and complex litigation, and are clearly capable of assessing the strengths and weaknesses of their respective positions. *Pierre-Val*, 2015 U.S. Dist. LEXIS at *2 ("courts should give weight to the parties' consensual decision to settle class action cases, because they and their counsel are in unique positions to assess the potential risks"). Where there "is no evidence of any kind that the parties or their counsel have colluded or otherwise acted in bad faith in arriving at the terms of the proposed settlement … counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube v. American Equity Inv. Life Ins. Co.*, 226 F.R.D. 696, 703 (M.D. Fla. 2005).

### 3. The Settlement Provides Significant Relief to Class Members.

As detailed above, the Settlement will provide substantial relief to Settlement Class Members, satisfying the third Rule 23(e)(2) factor. The Settlement requires Defendant to pay $250,000 into a Settlement Fund to resolve the claims at issue. This represents a gross recovery of approximately $13.03 per Settlement Class Member, with a net recovery after attorneys' fees and costs, administrative expenses, and a Service Award, of approximately $5.00. This falls well within the range of reasonableness for settlement purposes. *See, e.g.*, *Gilbert v. SunTrust Banks,*

*Inc.*, Case No. 9:15-80415-Civ-Brannon (S.D. Fla. July 29, 2016) (court approved settlement COBRA notice case in which each class member's gross recovery was $32 and net of $11); *Hicks v. Lockheed Martin Corp, Inc.*, 8:19-cv-00261-JSM-TGW (M.D. Fla. Sept. 5, 2018) (court approved settlement COBRA notice case in which each class member's gross recovery was $24 and net of $13). The Settlement's monetary relief is particularly reasonable in this case because it was possible that Settlement Class Members could have recovered no monetary damages even if they were successful on the merits. Moreover, under the Settlement, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a settlement payment. *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("A settlement can be satisfying even if it amounts to a hundredth or even a thousandth of a single percent of the potential recovery.")

Notably, all Settlement Class Members will share in the recovery, as they do not need to file a claim form in order to receive a Settlement Payment. In determining whether a proposed settlement is fair, adequate and reasonable, the Court should consider several factors, including: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) the point on or below the range of possible recovery at which a settlement is fair, adequate, and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Waters*, 2012 U.S. Dist. LEXIS 99129, at *33 (*citing In re CP Ships Ltd. Securities Litigation*, 578 F.3d 1306, 1317-18 (11th Cir. 2009)).

There is a risk that Plaintiff and the Settlement Class could recover nothing even if the Court were to determine that the COBRA Notice at issue had a technical deficiency. *See, e.g.*, *Ctr. for Orthopedics & Sports Med. v. Horizon*, 2015 U.S. Dist. LEXIS 133763, *16 (D.N.J.

Sept. 30, 2015) (court did not impose statutory penalty because administrator did not act in bad faith); *Cole v. Trinity Health Corp.*, 2014 U.S. Dist. LEXIS 7047, *22 (N.D. Iowa Jan. 21, 2014) *aff'd* 774 F.3d 423 (8th Cir. 2014) (court did not award a statutory penalty even though administrator did not send COBRA Notice to plaintiff because administrator acted in good faith and plaintiff suffered no damages); *Gómez v. St. Vincent Health, Inc.*, 649 F.3d 583, 590-91 (7th Cir. 2011), as modified (Sept. 22, 2011) (affirming district court's decision to decline to award statutory penalties where plan participants were not "significantly prejudiced by the delay in notification."); *Jordan v. Tyson Foods, Inc.*, 312 F. App'x 726, 736 (6th Cir. 2008) (affirming district court's decision to decline to award statutory penalties where counsel for the plan participant "was not able to articulate any appreciable harm" from the failure to provide notice). Accordingly, the negotiated relief is more than adequate, and should be approved.

As set forth above, continuing the litigation would have been complicated, protracted, and expensive. The risk of the Named Plaintiff being unable to establish liability and damages was also present because of the numerous defenses asserted by Defendant. Though Named Plaintiff survived class certification, it was vigorously contested by Defendant, based upon assertions that the Named Plaintiff lacked standing and therefore could not adequately represent the class. The Parties engaged in significant discovery, including conducting depositions and the engaging by Defendant of an expert. Moreover, both sides briefed and filed their respective motions for summary judgment, submitted a joint pretrial statement, and even filed trial briefs. Each of these phases of litigation presented serious risks, which the Settlement allows Named Plaintiff and the Settlement Class to avoid. *See, e.g. In re Painewebber Ltd. P'ships Litig.*, 171 F.R.D. 104, 126 (S.D.N.Y. 1997) ("Litigation inherently involves risks.").

Courts reviewing the issue of fairness have also favored settlements that allow even partial recovery for class members where the results of suits are uncertain. *Murray v. GMAC Mortg. Corp.*, 434 F.3d 948, 952 (7th Cir. 2006) ("Risk that the class will lose should the suit go to judgment on the merits justifies a compromise that affords a lower award with certainty."); *see also In re Mexico Money Transfer Litigation*, 267 F.3d 743 (7th Cir. 2001).

The gross *pro rata* Settlement Class Member recovery in this settlement is in line with per class member settlement amounts in similar cases. Under the Parties' Settlement Agreement the Settlement Class Members can quickly realize a portion of their possible statutory damage claims from the Settlement Fund, even if the amount is less than the minimum that could have been recovered through successful litigation. Likewise, Defendant caps its exposure at less than the minimum it could owe to each Settlement Class Member if it were to lose at trial, in addition to avoiding protracted litigation and a trial which would involve significant time and expense for all Parties. The Named Plaintiff supports the Settlement. Class Counsel believes that the bulk of the other Settlement Class Members will have a favorable reaction to the Settlement and not object once they have been advised of the settlement terms through the Court-approved Class Notices.

### 4. The Proposal Treats Class Members Equitably Relative to Each Other.

The last Rule 23(e)(2) factor is satisfied because the proposed Settlement treats class members equitably. In fact, they are treated identically. As set forth above, with the Settlement Class comprised of approximately 19,175 participants, each Settlement Class Member will receive a gross settlement payment of $13.03 with a net settlement payment if the Court awards attorneys' fees and expenses, administrative costs and a Service Award, of approximately $5.00. This a "claims paid" Settlement. Settlement Class Members do not have to submit claim forms

to receive a share of the settlement proceeds. Rather, all Settlement Class Members will simply receive checks after the Settlement Effective Date. If Settlement checks are not cashed, the Settlement Agreement provides for a donation to a *cy pres* recipient, Bay Area Legal Services.

If Plaintiff had chosen to continue to litigate her claims, a successful outcome was far from guaranteed. As discussed below, Plaintiff faced significant risks with respect to liability and damages. First, with respect to liability, important issues remained to be decided upon the evidence presented. Second, with respect to damages, the pertinent regulations provide for a maximum statutory penalty of $110 per day, but no minimum penalty. *See* 29 C.F.R. § 2575.502c-1. Whether or not to award statutory penalties is left completely within the discretion of the court. *See Scott v. Suncoast Beverage Sales, Ltd.,* 295 F.3d 1223, 1232 (11th Cir. 2002). In other words, even if Plaintiff was able to prove that Defendant violated the COBRA-notice regulation, Plaintiff and Settlement Class Members may have recovered only nominal damages, or even nothing at all. Third, even if Plaintiff overcame Defendant's summary judgment motion, and won at trial, and convinced the court to award statutory penalties, Defendant likely would have appealed in final adverse judgment, meaning Plaintiff would also need to survive any and all appellate proceedings.

Thus, to avoid the foregoing risks, it was reasonable for Plaintiff to settle the case at this juncture, in order to assure class-wide monetary and prospective relief for Settlement Class Members. *See, Bennett v. Behring Corp.,* 76 F.R.D. 343, 349-50 (S.D. Fla. 1982) (stating that it would have been "unwise [for plaintiffs] to risk the substantial benefits which the settlement confers … to the vagaries of a trial"), *aff'd,* 737 F.2d 982 (11th Cir. 1984).

### 5. The Settlement Will Avoid a Complex, Expensive, and Prolonged Legal Battle Between the Parties.

Aside from the risks of litigation, continuing the litigation would have resulted in complex, costly, and lengthy proceedings before this Court and likely the Eleventh Circuit, which would have significantly delayed relief to Settlement Class Members (at best), and might have resulted in no relief at all. Moreover, Defendant would have appealed any judgment entered against it, resulting in further expense and delay. Indeed, complex litigation such as this "can occupy a court's docket for years on end, depleting the resources of the parties and taxpayers while rendering meaningful relief increasingly elusive." *In re U.S. Oil & Gas Litig.*, 967 F.2d at 493. By entering into the Settlement now, Plaintiff saved precious time and costs, and avoided the risks associated with further litigation, trial, and an inevitable appeal.

## IV.  CONCLUSION.

For the foregoing reasons, the Parties respectfully request that the Court enter the attached proposed Final Approval Order. A proposed Order is attached as Exhibit A.

DATED this 13th February, 2020.

Respectfully submitted,

/s/ Brandon J. Hill
Luis A. Cabassa
Florida Bar No. 053643
Brandon J. Hill
Florida Bar No. 37061
**WENZEL FENTON CABASSA, P.A.**
1110 North Florida Avenue, Suite 300
Tampa, FL 33602
Telephone (813) 224-0431
Fax (813) 229-8712
Email: lcabassa@wfclaw.com
       bhill@wfclaw.com
       twells@wfclaw.com

Chad A. Justice
Florida Bar No. 121559
**JUSTICE FOR JUSTICE, LLC**
1205 N. Franklin St.
Tampa, FL  33606

/s/ Ian C. Taylor
Fredrick H.L. McClure
Florida Bar No. 147354
Amanda E. Reagan
Florida Bar No. 92520
**DLA PIPER LLP (US)**
3111 W. Dr. Martin Luther King Jr. Blvd.
Suite 300
Tampa, Florida 33607-6233
Phone:  813-229-2111
Fax:  813-229-1447
Email: fredrick.mcclure@dlapiper.com
       amy.reagan@dlapiper.com
       sheila.hall@dlapiper.com

Mark Muedeking (*pro hac vice*)
Ian C. Taylor (*pro hac vice*)
**DLA Piper LLP (US)**
500 8th Street, NW

Telephone (813) 254-1777
Fax (813) 254-3999

*Attorneys for Plaintiff*

Washington, DC 20004
Phone:  202-799-4000
Fax:  202-799-5000
Email:  mark.muedeking@dlapiper.com
            ian.taylor@dlapiper.com
*Attorneys for Defendant*
*Marriott International, Inc.*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 13th day of February, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sent notification of this filing to all counsel of record.

                                           */s/Brandon J. Hill*
                                           **BRANDON J. HILL**